**In re the Marriage of Candace K. EYLER, Appellant (Petitioner Below),**

v.

**Gary EYLER, Appellee (Respondent Below).**

**No. 06S01–8605–CV–470.**

Supreme Court of Indiana.

May 22, 1986.

Peter G. Tamulonis, Kightlinger, Young, Gray & De Trude, Indianapolis, for appellant.

Gregory F. Hahn, William T. Rosenbaum, Cohen Malad & Hahn, Indianapolis, for appellee.

## ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

This is a dissolution action in which the wife files a petition for transfer and requests that we vacate the opinion of the Court of Appeals, *Eyler v. Eyler* (1985), Ind.App., 485 N.E.2d 657 (Ratliff, P.J., dissenting). She claims error upon the following issues:

1. whether in its division of personal property, the trial court improperly applied a minority interest discount and excluded property acquired following final separation;

2. whether the trial judge should have disqualified himself;

3. whether the trial court improperly relied upon a custody evaluation conducted by Tri-County Mental Health Center; and,

4. whether the trial court's custody determination was erroneous.

Transfer is hereby granted.

## ISSUE I

The major marital asset in this marriage was the parties' jointly-titled shares of stock in the business operated by the husband. In its findings of fact and conclusions of law, the trial court determined that the property of the parties should be fixed and valued as of the date of filing of the petition for dissolution. Following an extensive review of the evidence, the trial court found that at the time of filing, the shares owned by the husband and wife constituted 90.2% of the outstanding stock in the business, and that as of said date the "most appropriate and accurate evaluation of the business" was $1,308,992.00. During the ensuing separation, the husband purchased the remaining 9.8% of the stock of the company.

The wife's allegations of error arise from the following findings by the trial court:

71. That the Court now finds that discounts of 25% for the minority interest aspect of wife's share, and 20% for the "one man business" aspect of the business, should both be applied to the value, and accordingly the Court finds the combined discounted value of the business, Superior Training Services, Inc., to be the value of $785,395.00.

72. That the Court further finds that the Eyler's marital estate interest of 90.2% of the stock, to have a value of $708,426.00.

This latter value was then included in the trial court's calculations determining the total marital assets for division.

Ind.Code § 31-1-11.5-11 provided in pertinent part as follows:

a) For purposes of this section, "final separation" means the date of filing of the petition for dissolution of marriage under Sec. 3 of this Chapter.

b) In an action pursuant to Sec. 3(a) of this Chapter, the Court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, * * *.

■ The trial court correctly determined that the shares of stock acquired by the husband in his own name following the separation were not subject to division as marital assets. The detailed findings of the trial judge included valuations of all the parties' assets as of the date of separation, thus precluding the wife's argument that the husband "obviously through use of a portion of the marital estate" acquired the additional 9.8% interest following separation and prior to dissolution decree.

■ With respect to the manner in which the "minority interest" discount was applied by the trial court, we find error. The trial court has discretion in selecting any date between the date of filing of the dissolution petition and the hearing for purposes of valuation of a marital asset. See, *Eppley v. Eppley* (1976), 168 Ind.App. 59, 67, 341 N.E.2d 212, 218. Regardless whether using the date of separation, or using any other date through the completion of the final hearing, the shares constituting the 90.2% share of the business were at all said times held in joint ownership and not burdened by the factors which may warrant consideration of the "minority interest" discount.

■ Therefore, in calculating the total assets of the marriage to be divided, we find that the trial court's valuation of the business at $708,426.00 to be erroneous to the extent that it includes a 25% minority interest reduction. Using the trial court's valuation of the business to be $1,308,-992.00, reduced by 20% for the "one man business" consideration to which wife does

not object, we calculate that the portion includable in the assets of the marriage subject to division to be 90.2% thereof, or $944,568.62.

■ After consideration of other assets and liabilities, the trial court summarized the division of property as resulting in a net distribution of the wife of $437,153.68 (44%), and to the husband $555,267.28 (56%). However, we decline the wife's suggestion that the trial court should be required to apply the same resulting 56/44 property division ratio to determine the final division applicable to the increase resulting from the recalculation of the business stock valuation. Many factors may properly be considered by the trial judge, not the least of which may be the extent to which the increase in business valuation is attributable to property acquired by each spouse prior to the marriage or through inheritance or gift. Because the trial court's findings include a determination of the value of the business stock owned by the husband prior to the parties' marriage, that the husband received gifts during the marriage from his father, the trial court should now determine anew the final division of property.

■ With respect to the remaining issues, we adopt and reiterate the opinion of the Court of Appeals as follows.

"The trial court granted to Gary and Candace joint custody of the children, with Gary having primary custody. Candace asserts that the custody award was erroneous, because it was contingent upon a change in circumstances. To support her assertion, Candace emphasizes that the original language of Finding of Fact No. 25 was conditional:

25. That pursuant to testimony given before the court, Mr. Eyler is going to marry Peggy Patterson. Mary Smith, an employee of the Husband, who works on a daily basis in the Husband's home has a close and daily relationship with the children. The Court's Order awarding the Husband physical custody of the children is contingent upon Miss Patterson

becoming more knowledgeable about child rearing through attending parenting classes, literature and continued involvement in the children's activities. The Order is also contingent upon the fact that Mary Smith, or someone who is of the same demeanor and temperament as Mrs. Smith be employed by Mr. Eyler so that individual can provide the children the needed necessary [sic] discipline and structure. In addition, the Court also instructs Mr. Eyler to be more accessible to the children by working closer to home.

"Both Gary and Candace filed motions to correct error which challenged the language of Finding of Fact Number 25. The trial court ruled on the motions to correct error:

20. Both the Petitioner and the Respondent have contended that this Finding of Fact is erroneous or ambiguous and the Court finds that portions of this Finding will lead to further controversy if not amended.

21. The Court did not intend for the award of joint custody with primary custody to Husband to be contingent and the usage of that word in Finding of Fact 25 was unintentional and mistaken.

22. The Court hereby corrects, clarifies and amends Finding of Fact 25 as follows:

'25. That pursuant to testimony given before the court, Mr. Eyler is going to marry Peggy Patterson. Mary Smith, an employee of the Husband, who works on a daily basis in the Husband's home, has a close and daily relationship with the children.'

"The trial court explained that the award of primary custody to Gary was not contingent upon a change in present circumstances. In its discretion, the trial court may grant custody to either parent, or deny it to both, according to their fitness and ability at the time of the decision. *Stone v. Stone,* (1902) 158 Ind. 628, 64 N.E. 86. Amended Finding of Fact Number 25 manifests no error in the award of custody.

"Candace argues that even if the custody award was not contingent upon a change in circumstances, it constituted an abuse of discretion. To constitute an abuse of discretion, the court's decision must be one which is clearly against logic and effect of the facts and circumstances before the court. The reviewing court must determine whether the evidence adduced at trial can serve as a rational basis for the court's decision. However, the court of appeals will neither reweigh the evidence nor assess the credibility of witnesses. *In re Marriage of Julien,* (1979) Ind.App., 397 N.E.2d 651, 653.

"In making the determination of custody, the trial court in the instant case had a substantial amount of contradictory evidence before it. Although the evidence might have supported a conclusion different from the one reached by the court, we will not substitute our judgment for that of the trial court. *See id.* Candace has failed to show a manifest abuse of discretion warranting reversal of the trial court's decision.

"Candace contends that undue credence was given to the custody evaluation report prepared by Tri-County Mental Health Center, because the trial judge served on the Board of Directors of Tri-County. On August 1, 1984, Tri-County was appointed to conduct an evaluation pursuant to IND. CODE § 31–1–11.5–22(a) (1982). Candace did not object to the appointment of Tri-County at that time or later when the report was introduced into evidence. Candace failed to preserve the alleged error. *See Winkler v. Winkler,* (1969) 252 Ind. 136, 246 N.E.2d 375.

"In the alternative, Candace maintains that the trial court should have granted her motion to strike the custody evaluation report. The motion to strike alleged that Tri-County had exceeded the bounds of the court order by interviewing Gary's housekeeper and that Tri-County had prejudiced Candace by including the testimony of that hostile witness in its report. The trial court properly denied the motion to strike.

"IND.CODE § 31–1–11.5–22 (1982) permits the court to order an investigation and report concerning custodial arrangements for the children of a dissolved marriage. The statute authorizes the investigator to consult any person who may have information about the children and their potential custodial arrangements. Tri-County did not exceed its authority by interviewing Gary's housekeeper. The housekeeper took care of the children during the term of her employment, and she had been retained by Gary in the event he was granted primary custody. Thus, the housekeeper had information concerning the children and their potential custodial arrangements.

"Including the testimony of the housekeeper in the evaluation report was not erroneous. Tri-County's report was a compilation of the information gathered during its investigation, and the housekeeper was a person properly consulted by Tri-County. Although the housekeeper's testimony reflected unfavorably on Candace, the inclusion of such testimony did not constitute a basis for striking the custody evaluation report.

"In its distribution of personal property, the trial court referred to an appraisal of the parties' assets introduced into evidence by Gary. The trial court awarded to Gary the items marked by yellow pen and to Candace the remaining items. When ruling on the parties' motions to correct error, the trial court stated that it had reversed the intended distribution of assets. The amended distribution gave to Candace the items marked by yellow pen and to Gary the remaining items.

"On appeal, Candace maintains that the exchange of personal property awarded to each party constituted an abuse of discretion. Yet a close examination of the trial court's original distribution reveals such incongruities as an award of Candace's golf clubs to Gary and Gary's golf clubs to Candace. By amending the distribution of assets, the trial court effected a property division consistent with the logic and effect of the evidence before the court. We find no abuse of discretion. *See In re Marriage*

*of Hirsch,* (1979) 179 Ind.App. 166, 385 N.E.2d 193.

"Additionally, Candace notes that the trial court changed the specific items of personal property being awarded to each party without adjusting the dollar values originally assigned to each party's respective share of personal property. According to Candace, reversible error is manifest.

"Contrary to Candace's position, the clerical error in the distribution of personal property was not reversible error. A court on appeal may correct a trial court's judgment without awarding a new trial, unless such relief is impracticable or unfair to any of the parties. Ind. Rules of Procedure, App. Rule 15(N); *Anacomp, Inc. v. Wright,* (1983) Ind.App., 449 N.E.2d 610. Moreover, the trial court could have corrected the arithmetical error by nunc pro tunc entry at any time, even after appeal. Ind. Rules of Procedure, T.R. 60(A); *Drost v. Professional Building Service Corp.,* (1978) 176 Ind.App. 172, 375 N.E.2d 241. We therefore order modification of the decree of dissolution to accurately reflect the dollar values assigned to each party's respective share of personal property.

"In the fifth issue raised on appeal, Candace avers that the trial judge should have disqualified himself because Gary's attorney was the co-chairman of the "Bi-Partisan Friends of Judge Drury" political committee. Candace discovered opposing counsel's political support for the trial judge on July 2, 1984, and trial commenced on July 10, 1984. However, Candace did not object to the trial judge continuing to serve, and she did not move for a change of judge. The asserted grounds for disqualification were presented for the first time in Candace's motion to correct error.

"In *Carson v. Associated Truck Lines,* (1968) 143 Ind.App. 431, 241 N.E.2d 78, the court of appeals addressed the failure to move for a change of judge or for disqualification of judge.

[T]he appellant, in rather strong terms, alleges that the trial judge was biased and prejudiced and should have disqualified himself in this case. Although ap-

pellant concedes that our laws provide for a change of venue, change of judge, or a request that a judge disqualify himself, no such motions were apparently made in this action.... The appellee notes that a search of the record shows no question was ever raised by appellant concerning any alleged bias or prejudice of the trial court. If the appellant fails to point out alleged misconduct of the trial court *during the course of trial* and give such court an opportunity to correct itself at that time, then the appellant waives this issue on appeal.

*Id.* at 434–35, 241 N.E.2d at 79–80 (emphasis in original).

"Motions for change of judge and venue and for disqualification of judge are designed to avoid the problem of judicial prejudice. *Matter of Estate of Baird,* (1980) Ind.App., 408 N.E.2d 1323. Having failed to avail herself of those motions or to offer the objection necessary to preserve error, Candace may not pursue this issue on appeal. *See id.* at 1331."

Having adopted and incorporated the foregoing excerpt of the opinion of the Court of Appeals, as determinative of the remaining issues, this cause is now remanded with instructions to modify the decree to show a corrected value of that portion of the business stock includable in the marital estate, to show correct dollar value assigned to each party's respective share of personal property, and for redetermination of final property division. Judgment in all other respects affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.