F. Allen JOHNSON; Melissa Johnson; and Jeremy Johnson, Appellants (Defendants Below),

v.

Ruth A. JOHNSON, Appellee (Plaintiff Below).

and

Verne O. Wise, as Trustee, Appellee (Plaintiff Below).

No. 08A02–9003–CV–189.[1]

Court of Appeals of Indiana, Third District.

Aug. 14, 1991.

---

1. This case was diverted to this office by order    of the Chief Judge.

Arden W. Zobrosky, Marion, for appellants.

William D. Hall, Indianapolis, for appellees.

STATON, Judge.

Allen Johnson, Melissa Johnson and Jeremy Johnson appeal a judgment in favor of Ruth Johnson in her action to quiet title to real estate. The appellants present four issues for our review, which we consolidate and restate as three:

I. Did the Carroll Circuit Court err in exercising jurisdiction over a marital property issue subsequent to a grant of marital dissolution by the Grant Superior Court?

II. Was the trial court's determination as to the validity of the trust agreement concerning the subject farm unsupported by sufficient evidence and contrary to law?

III. Did the trial court err in refusing to grant the appellants' Motion for Change of Venue?

We affirm.

Allen and Ruth (Wise) Johnson were married on July 26, 1963. On January 11, 1971, Ruth's parents, Verne and Blanche Wise, conveyed the farm which is the subject of this appeal to Ruth, Allen, Mary Ann Frus and Gail Frus.

During their marriage, Ruth and Allen were active members of The Bethel Church in Marion, Indiana (the "Church"). In 1980, Ruth and Allen were asked to serve as chairmen of the Church's building fund. Ruth and Allen subsequently executed personal guaranties of the repayment by the Church of loans totalling $690,000.00.

During 1984, the Church suffered a substantial decrease in membership and was unable to meet its financial obligations to The First National Bank in Marion. On October 10, 1984, the Bank informed Ruth and Allen of their obligation as guarantors.

On July 10, 1985, Ruth and Allen met with Ruth's parents at the offices of George Obear, who had for many years served as the Wises' attorney. Obear presented and explained a "Trust Agree-

ment" providing that Ruth and Allen's undivided one-half interest in the farm would be placed in trust for the benefit of their two minor children, Melissa and Jeremy. Verne Wise was the named Trustee.[2]

The parties conferred at length; however, Mr. Wise continued to express reservations about participation in the proposed transaction. Attorney Obear suggested that the parties sign the trust document, but notify him promptly if they decided that the trust should not be recorded. Consequently, the elderly Wises would not be required to make an additional several-hour journey to return to Obear's offices.

Later that evening, Obear received a telephone call from the Wises, requesting that no further action be taken with respect to the Trust Agreement. The original document was placed in Obear's safe, with a notation that it was not to be recorded.

On June 24, 1986, Grant Superior Court II granted Ruth and Allen a Decree of Dissolution of Marriage. The dissolution decree incorporated a property settlement agreement reached by Ruth and Allen. The property settlement itemized certain assets to be retained by Allen, and provided that "Ruth shall have as her sole and separate property all of the remaining assets of the parties." Record, p. 24. Each party was ordered to promptly execute any title or assignment necessary to effect the property settlement.

The parties proceeded as if title to the farm was vested in Ruth. Verne Wise never actively assumed a role of trustee. Ruth collected rental income generated from the farm, and reported it as her sole income for income tax purposes. Allen, by counsel, suggested that the farm income was available to Ruth for purposes of computing her child support obligation to Jeremy. However, Allen refused to execute a quit-claim of his interest in the farm.

On July 17, 1987, Ruth filed in Grant Superior Court II a Verified Affidavit for Citation for Contempt against Allen requesting, *inter alia,* that Allen be ordered to tender to her a copy of the Trust Agreement that he had obtained from Attorney Obear's secretary. Record, p. 181. On August 3, 1987, an order was issued wherein the trial court stated: "The Court further finds the trust agreement executed by petitioner and respondent is a private matter between the parties and is not a matter for contempt proceedings." Record, p. 174.

On August 14, 1987, Allen recorded a copy of the Trust Agreement in the office of the Recorder of Carroll County. Ruth subsequently brought an action in Carroll County seeking to quiet her title to the subject farm. The appellants' Motion to Dismiss pursuant to T.R. 12 and Motion for Change of Venue were denied.

The trial court quieted title to the farm in Ruth, upon finding the purported trust a nullity:

"The Court concludes that the purpose of execution of the trust agreement on July 10, 1985, was to defraud and/or defeat the claim of the bank as a creditor under the Guaranty executed for the church previously by the Johnsons and, therefore, so far as the creditor was concerned, the same was a nullity in any event. The court further concludes that the trust agreement was never implemented in any event. The trustee never took any action, nor was any action taken by the beneficiaries or anyone on their behalf nor by any of the parties."

Record, p. 123.

This appeal ensued.

## I.

### *Jurisdiction*

The appellants contend that the dissolution court failed to determine whether the farm property was a marital asset. They argue that clarification and enforcement of a dissolution decree is within the exclusive jurisdiction of the issuing court, and that

---

**2.** Conflicting evidence was presented concerning who initiated the drafting of the Trust Agreement. However, all parties agreed that the meeting and consideration of a trust formation was motivated by the Johnsons' desire to protect their farm from foreclosure proceedings.

Ruth's quiet title action constitutes a collateral attack on the dissolution decree.

Ruth maintains that the dissolution court fully adjudicated the parties' property rights and awarded the farm to her. She argues that her quiet title action was properly initiated in the county where the subject land is located, and is not a collateral attack on the dissolution decree or property settlement.

The Indiana Dissolution of Marriage Act, IND.CODE 31–1–11.5–10, encourages agreement by the parties as to the disposition of the marital estate. I.C. 31–1–11.5–10(b) provides that the terms of a property settlement, if approved by the dissolution court, shall be incorporated into the dissolution decree. A property settlement that is incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent. I.C. 31–1–11.5–10(c).

■ A property settlement which is incorporated into a final divorce decree is a binding contract. The dissolution court may not modify or revoke the settlement absent fraud, duress or undue influence. *Smith v. Smith* (1989), Ind.App., 547 N.E.2d 297, 300.

The terms of the property agreement executed by Ruth and Allen on April 25, 1986 and incorporated into the June 24, 1986 Dissolution of Marriage Decree are unambiguous. Ruth was awarded all marital assets other than those specifically itemized as property of Allen.

Allen relies upon *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391 in his assertion that the Grant Superior Court has exclusive jurisdiction to determine the ownership of the farm here at issue. In *Anderson,* the Adams Circuit Court issued a decree of dissolution but did not enter an order adjudicating the parties' property rights. Following a negotiated property settlement, the wife brought an action in the Wells Circuit Court. She alleged, *inter alia,* that the husband had committed fraud in the execution of the property settlement. The wife's action was dismissed

for failure to state a claim upon which relief could be granted.

On appeal, the *Anderson* court concluded:

"Here, the trial court has failed to render a decision on an issue statutorily presented to it by any petition for the dissolution of the parties' marriage—the division of marital property. Thus, the decree is in the nature of a judgment upon less than all of the issues and the dissolution court retains exclusive jurisdiction over the issue of the parties' property rights."

*Id.* at 401.

■ Unlike the Andersons, the Johnsons sought and received a court decree which made a full disposition of their marital assets and established their respective property rights with certainty. A dissolution court retains exclusive jurisdiction to determine the appropriate division of marital property where no disposition has been made or where a disposition has been made, but a party subsequently discovers the existence of an asset not described and set forth in the property settlement. *Id.* at 398.

Here, however, Ruth did not request that the Carroll Circuit Court issue a property division order or modify the Grant Superior Court order. Rather, she sought enforcement of the order of the dissolution court, which had fully discharged its duty by ordering the marriage of the parties dissolved and adjudicating their respective property rights. Pursuant to IND.CODE 32–6–4–1, Ruth brought suit in the county in which the farm is located. The Carroll Circuit Court did not err in exercising its jurisdiction to enforce the order of the Grant Superior Court.

## II.

### *Determination of Trust's Invalidity*

Appellants next claim that the trial court erred in finding the trust agreement invalid. They argue that the trial court's decision is not supported by the evidence and is contrary to law.

■ In reviewing the sufficiency of the evidence in a civil case, we decide whether

there is substantial evidence of probative value supporting the trial court's judgment. We do not reweigh the evidence or judge the credibility of the witnesses. We look to the evidence most favorable to the judgment, along with all reasonable inferences to be drawn therefrom. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904.

■ Ruth testified that a plan was conceived to protect the farm from the Church's creditors, and that Allen directed Attorney Obear to prepare a trust document. However, Ruth and her father were reluctant to participate in the scheme. Ruth stated that the trust document was signed as a convenience to her parents, but was placed in Attorney Obear's file to await a final decision on implementation. Ruth additionally testified that she, Allen, Verne Wise and Blanche Wise conferred on the evening that the trust document was signed and reached a decision to "not put the trust into effect". Record, p. 322.

Attorney Obear testified that the Wises hesitated to proceed with the trust. Obear suggested that the Wises sign the instrument, but contact him later that evening with directions "to go ahead or to stop." Record, p. 405. Obear received a call shortly after the in-office conference, directing him to take no further action with respect to the trust. Obear placed the instrument in his office safe, with a notation that it not be delivered. Afterward, while Obear was on vacation, Allen secretly obtained a copy of the instrument from Obear's secretary. Obear rendered an expert opinion that there was no effective delivery of the trust document. Record, p. 408.

Blanche Wise testified that she called Obear at his residence on the evening that the trust document was signed, and "instructed him to hold up proceedings." Record, p. 434. She objected to a trust designed "to back off of an agreement for a church promise." Record, p. 436.

The record reveals ample evidence to support the trial court's determination that the trust document was drafted to defraud a creditor, but was never implemented. The trial court did not err as a matter of law in refusing to enforce a purported trust which, based upon the intent of the parties, was never consummated.

III.

*Change of Venue*

■ Lastly, appellants argue that the trial court erred in refusing to change venue.

On June 19, 1989, Ruth filed her complaint in four paragraphs. Paragraph I involved all the named defendants, while Paragraphs II, III and IV involved Allen only. On July 25, 1989, Verne Wise filed a disclaimer to any interest in the trust property. On August 14, 1989, Jeremy's guardian ad litem filed an answer on Jeremy's behalf. On August 29, 1989, Melissa filed an answer to Paragraph I and Allen filed an answer to all four paragraphs of Ruth's complaint.

On August 31, 1989, Allen filed a Motion for Change of Venue which was granted without notice to Ruth. On September 5, 1989, Ruth filed a brief in opposition to Allen's Motion. The trial court reconsidered Allen's Motion for Change of Venue and denied it because it was not timely filed.

Allen claims that the issues were not closed until the filing of his answer on August 29, 1989 and that his motion for change of venue was timely filed. Ruth replies that the issues were first closed when Jeremy filed his answer on August 14, 1989; therefore, Allen's motion was untimely.

■ In multiple-defendant lawsuits, the issues are first closed with the filing of the first answer on the merits. *Rayburn v. Eisen* (1975), 166 Ind.App. 329, 332, 336 N.E.2d 392, 393, *reh. denied, trans. denied.*

Ind. Trial Rule 76 provides that any application for a change of venue shall be

filed not later than ten days after the issues are first closed on the merits.

Allen's August 31 Motion for Change of Venue was filed more than ten days after the filing of Jeremy's answer on August 14. The trial court did not err in refusing to change venue.

Affirmed.

MILLER, J., concurs.

SHIELDS, J., concurs in issues I & III, and concurs in result as to issue II.