Philip D. QUILLEN, Appellant
(Respondent below),

v.

Linda J. QUILLEN, Appellee
(Petitioner below).

No. 29S02–9608–CV–531.

Supreme Court of Indiana.

Aug. 6, 1996.

Jon D. Krahulik, Yosha, Ladendorf, Krahulik & Weddle, Indianapolis, E. Davis Coots, James D. Crum, Coots, Henke & Wheeler, Indianapolis, for Appellee.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, for Appellant.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

We affirm the judgment of the trial court in ordering the dissolution of the marriage of husband Philip D. Quillen and wife Linda J. Quillen to the extent set forth below.

### Background

On September 21, 1992, husband was arrested and incarcerated on child molesting charges.[1] On September 24, 1992, wife peti-

---

1. The victim of these allegations was one of husband's and wife's twin daughters; husband sub-

sequently pled guilty to two counts of sexual

tioned for the dissolution of the couple's nearly 20 year marriage. In ordering the dissolution of the marriage, the trial court entered extensive findings of fact and conclusions of law in dividing the marital property. Husband appealed on multiple grounds and a divided panel of the Court of Appeals affirmed in part and reversed in part. *Quillen v. Quillen*, 659 N.E.2d 566 (Ind.Ct.App.1995). Concurring in part and dissenting in part, Judge Hoffman argued that to the extent the Court of Appeals majority reversed the trial court, it did so by improperly reweighing the evidence. We agree with Judge Hoffman.

## I

■ In the Court of Appeals, husband contended that the trial court abused its discretion in failing to include in the property distribution $76,000 in funds from Quillen Construction, Inc., that wife used to pay business expenses during husband's incarceration. The Court of Appeals held that these funds had been properly accounted for. *Id.* at 573.

■ Husband also argued that the trial court abused its discretion by ordering $135,000 set aside in a trust account to fund any capital gains tax that might become due as a result of the dissolution sale of the marital residence. The Court of Appeals remanded this issue to the trial court for resolution in accordance with its opinion. *Id.* at 574–75.

■ Husband asserted that it was error for the trial court to (i) order him to reimburse wife for expenses related to the children and incurred while the dissolution petition was pending and (ii) fail to find that husband's and wife's twin daughters were emancipated. The Court of Appeals affirmed the trial court's findings on both of these issues. *Id.* at 575–76.

And husband contended that the trial court impermissibly relied on fault when dividing the marital property and allocating expenses. The Court of Appeals rejected husband's contention. *Id.* at 578–79.

We expressly adopt and incorporate by reference the judgment and opinion of the Court of Appeals on the foregoing issues. Ind.Appellate Rule 11(B)(3).

## II

■ The sole source of husband's and wife's employment income was Quillen Construction, Inc., their jointly-owned business through which they built and sold new homes. Husband was primarily responsible for the physical operation of the business and wife was primarily responsible for office operations, banking, and financial management. Husband argued to the Court of Appeals that the trial court abused its discretion when it valued Quillen Construction at $328,000 as of September 22, 1992, the date the Quillens separated.

## A

Recognizing our limited role in assessing evidence on appeal, we resist the temptation to get deeply involved in analyzing the valuation evidence presented at trial. We think it is sufficient for purposes of this opinion to observe that wife's expert, a certified public accountant who specializes in tax and business valuations, capitalized the net income of the business for the preceding five years after making certain adjustments,[2] made an additional adjustment for structured debt, applied a "discount for marketability," and arrived at a valuation of $328,000. The balance sheet of the business included in wife's expert's valuation report, prepared according to generally accepted accounting principles (GAAP), showed a net value of all of the business's tangible assets of $174,000. The $154,000[3] difference between the value of the

battery. Appellee's Brief in Support of Petition for Rehearing–Ex. A.

2. This adjusted net income averaged $127,613 for the preceding five years, ranging from a low of $88,680 in 1990 to a high of $166,644 in 1992.

3. At trial, the parties continually referred to this goodwill amount as "$200,000" and this figure

has spilled over into husband's briefs on appeal. *See, e.g.,* Appellant's Brief at 51; Appellant's Brief in Opposition to Petition to Transfer at 3. However, the $200,000 figure appears to have been the result of husband's counsel's rounding of the $328,000 total valuation to $300,000 and the $174,000 net tangible asset valuation to $100,000, producing a $200,000 difference.

business as calculated by wife's expert and the GAAP value of the business's tangible net assets was described as the business's "going concern value" or "goodwill." Husband's expert, a university professor with a doctorate in economics, relied upon the data compiled by wife's expert and testified that in his opinion the value of Quillen Construction was $9,959, representing the depreciated value of the business's property and equipment.[4] It was his view that the other tangible net assets of the business had no value to a prospective purchaser, and that "goodwill" was a meaningless concept in connection with this type of business. Additional testimony related to the value of the business was taken at trial from wife, from husband, and from the bank executive who handled the business's financing needs. This testimony included discussion of husband's ceasing to operate Quillen Construction as a single-family residential construction business, husband's assisting Naples 38, Inc., a single-family residential construction business managed by the parties' son, and the likelihood that financing would have been available to Quillen Construction from the business's prior lender after husband's arrest.

The trial court made the following finding as to the valuation of Quillen Construction:

Quillen Construction, Inc. is an Indiana Corporation engaged in the business of single-family residential construction and had a net value of $328,000.00 on or about the date of separation (Exhibit 22 and testimony of Mr. Alerding [wife's expert]). Husband has voluntarily elected to cease operating Quillen Construction. Instead, Husband has assisted the parties' son, Sean, in establishing an identical business. Husband works with or assists son in operating the business and son provides financial support to Husband as Husband requires in lieu of the payment of salary. Son's operation of the single-family residential construction business known as Naples 38, Inc. is a successor-in-interest to Quillen Construction, Inc. in that personal property owned by Quillen Construction,

Inc. is used in the operation of the business of Naples 38, Inc. Husband provides assistance, guidance and physical labor to Naples 38, Inc. as well as experience in dealing with members of building trades and real estate developers.

While not disputing that this valuation of Quillen Construction was accurate as of the date of the parties' separation, the Court of Appeals found the trial court's decision to value Quillen Construction on the date of separation to be an abuse of discretion because the value changed "radically" after that date. *Quillen,* 659 N.E.2d at 573. First, citing cases where a valuation date later than the date of separation was used, the Court of Appeals majority reasoned that because the business was still intact on the date of valuation, with husband and wife still involved in the operations, the valuation did not account for the fact that husband's arrest and incarceration would have a negative effect on the future value of the business. *Id.* at 572 (citing *Staller v. Staller,* 570 N.E.2d 1328 (Ind.Ct.App.1991), and *Showalter v. Brubaker,* 650 N.E.2d 693 (Ind.Ct.App.1995)). Second, the appellate court concluded that so long as husband was either incarcerated, or under threat of incarceration, which he was during the pendency of the entire proceedings before the trial court, financing for Quillen Construction was unavailable. Without financing, the business could not operate and the expectation of continued public patronage with Quillen Construction would be eliminated. *Id.* Third, the Court of Appeals rejected the trial court's finding that Naples 38 was the successor-in-interest to Quillen Construction because there was "nothing in the trial court's findings to establish that Naples 38 became invested with the rights of Quillen Construction or assumed any of its burdens." *Id.* at 573.

Judge Hoffman dissented, arguing that the majority had improperly modified the principle that the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution

---

4. The difference between the net tangible asset value of $174,000 and the net property and equipment value of $9,959 was comprised primarily of the value of home construction work in progress at the date of valuation. There were also some largely offsetting receivables and payables due to and from the Quillens and their children.

petition and the date of the hearing. *Quillen*, 659 N.E.2d at 579–80 (quoting *Eyler v. Eyler*, 492 N.E.2d 1071, 1074 (Ind.1986)). He concluded that the majority had reweighed the evidence in its analysis of the valuation of the business. *Id.*

## B

The trial court's findings were entered pursuant to Ind. Trial Rule 52(A) which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is further required to give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has made special findings of fact, as it did in this case, its judgment is clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind.1994). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Reasor*, 635 N.E.2d at 158.

When reviewing valuation decisions of trial courts in dissolution actions, a similar standard of review has been enunciated: that the trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary*, 582 N.E.2d 851, 852 (Ind.Ct.App. 1991). The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* In other words, we will not reverse the trial court unless the decision is clearly against the logic and effect of the

facts and circumstances before it. *Porter v. Porter*, 526 N.E.2d 219, 222 (Ind.Ct.App. 1988), *trans. denied.* A reviewing court will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Skinner v. Skinner*, 644 N.E.2d 141, 143 (Ind.Ct.App.1994).

Here we find ample evidence to support the trial court's finding. The Court of Appeals majority's conclusions about the effect of husband's arrest and possible incarceration and the availability of financing go to the weight to be given the valuation but do not make it erroneous as a matter of law.[5] We agree with Judge Hoffman that the "trial court acted within its discretion, and the evidence adduced supports the valuation." *Quillen*, 659 N.E.2d at 579 (Hoffman, J., dissenting).

## C

This court has made clear that the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution petition and the date of the hearing. *Eyler v. Eyler*, 492 N.E.2d 1071, 1074 (Ind.1986). Here the Court of Appeals held that the trial court had abused that discretion for the following reason:

> We hold that where, as here, the value of a marital asset changes radically between the date of final separation and the final hearing, it is an abuse of the trial court's discretion to select a valuation date that does not account for the events contributing to that change.

*Quillen*, 659 N.E.2d at 573. We disapprove this holding. Again we quote from Judge Hoffman:

---

5. We find the evidence conflicting on these points. While husband did not continue to operate Quillen Construction, he did continue in the residential construction business through Naples 38. (It was in this sense, and not as a matter of corporate law, that we think the trial court referred to Naples 38 as the "successor-in-interest" to Quillen Construction.) And while the bank executive in charge of the Quillen Construction account testified that he "probably" would not have recommended that the loan to Quillen Construction be approved with the criminal charges pending against husband, he also testified that the fact that husband had been arrested and then released on bond "would not have automatically ended any opportunity to renew the line of credit." Also, much of the testimony concerning financing revolved around the fact that the business line of credit was secured by a first mortgage on the marital residence, collateral that was no longer available because of the dissolution proceedings. However, the banker testified that this was an unusual method of financing residential construction and that typically contract and speculative residential construction is financed by using the construction in progress as collateral.

Because the standard currently allows the trial court to choose a date which recognizes changes in the value of the assets between the date of final separation and the final hearing, the modification serves only to limit the discretion of the trier of fact.

*Id.* at 580. (Hoffman, J., dissenting). The selection of the valuation date for any particular marital asset has the effect of allocating the risk of change in the value of that asset between the date of valuation and date of the hearing. We entrust this allocation to the discretion of the trial court. The rule proposed by the Court of Appeals majority would impermissibly impinge upon that discretion.

### III

■ Husband contends that the trial court abused its discretion by ordering him to pay $40,000 of wife's attorney fees and litigation expenses. Indiana Code § 31–1–11.5–16 gives the trial court authority to "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys fees." But the Court of Appeals found that the evidence did not support the trial court's findings that wife had "inadequate funds to discharge such fees" and that husband's payment was warranted "[d]ue to the respective earnings capabilities of the parties."

Once again, the standard of review under T.R. 52(A), described above, applies. And once again, case law has enunciated a similar standard of review where the trial court finding at issue is the award of attorney fees in a dissolution proceeding:

> Trial courts enjoy broad discretion in awarding allowances for attorneys' fees.... Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court.... In assessing attorney's fees the court may consider such factors as the amount of assets awarded to the parties, the relative earning ability of the parties, and which party initiated the action.

*Selke v. Selke,* 600 N.E.2d 100, 102 (Ind. 1992).

Here in addition to the evidence the Court of Appeals cited, the trial court had before it evidence that husband was underemployed, wife took on work as a waitress earning $688 per month, husband was being provided financial assistance from his son; wife was contributing to the maintenance and support of the twins; and wife was maintaining the tangible property of the parties after the sale of their residences. Under these circumstances, the findings of the trial court were not clearly erroneous.

### IV

■ In the Court of Appeals, husband contended that the trial court abused its discretion in failing to include in the property distribution (i) $40,000 in wife's money market account at the time the dissolution petition was filed, and (ii) approximately $1,850 in wife's business account as of October 31, 1992. The Court of Appeals observed that "[n]either party included the accounts in their proposed property division submitted to the trial court. Similarly, the trial court made no findings concerning these accounts." The appellate court thereupon remanded the money market and business account issues for determination as to whether they constituted marital assets and, if so, appropriate adjustment of the property division. *Id.* at 574.

■ We agree with Judge Hoffman that remand was improper. *Id.* at 580 (Hoffman, J., dissenting). Any disposition of these accounts is unnecessary since review of the record reveals that no testimony or documentation was entered into evidence concerning the balance of the accounts. Where the parties fail to present evidence as to the value of assets, it will be presumed that the trial court's decision is proper. *Cf. Livingston v. Livingston,* 583 N.E.2d 1225, 1228 (Ind.Ct. App.1992).

### V

■ Included in the trial court's order was the following provision establishing a trust for the payment of future counseling

and educational expenses for the twin daughters:

> In order to assure that funds are available for the counseling and educational expenses of the daughters following the resolution of the criminal case, a portion of the marital property should be set aside ... representing a fifty percent (50%) contribution by each parent to said expenses.
>
> ... The escrowed proceeds shall be used to fund a trust for [each of the twin daughters] in the amount of $40,000 in each trust. The trust funds and accumulated interest shall be used for counseling expenses and educational expenses for each child for a period of four years following the resolution of Husband's pending charges. Educational expenses have previously been defined in [this order]. Any funds remaining at the end of the four-year period shall be distributed fifty percent to Husband and fifty percent to Wife.

Husband argued to the Court of Appeals that the trial court erred in establishing these trust funds. The Court of Appeals affirmed the trial court as to the provision for educational expenses, *Quillen*, 659 N.E.2d at 577, and we adopt and incorporate by reference its judgment and opinion in this respect. Ind.App.R. 11(B)(3).

▆ As to the counseling expenses, husband argued that the trial court had no authority to order what "amounts to a form of [child] support" "for children who have shown ... [no] evidence of disability." Ind. Code § 31–1–11.5–12(d)(2) provides: "The duty to support a child under this chapter ceases when the child reaches twenty-one (21) years of age unless: ... the child is incapacitated in which case the child support continues during the incapacity or until further order of the court...." The Court of Appeals majority correctly concluded that the requirement of a showing of incapacity did not apply here because the children were nineteen, not twenty-one, when the issue was considered and the expenses ordered. However, we believe the Court of Appeals erred

when it went on to conclude that the lack of any incapacity precluded the trial court from providing for payment of counseling expenses incurred after the twins' twenty-first birthday.[6] *Id.* at 577–78. As Judge Hoffman pointed out, the trial court, relying on expert testimony, specifically found that both twins had "on-going counseling needs related to victim abuse and post traumatic stress syndrome." *Id.* at 580 (Hoffman, J., dissenting). This was a sufficient finding of incapacity under the statute to authorize the trial court to order the counseling expenses. We affirm the trial court on this issue.

### Conclusion

We (i) grant transfer, (ii) adopt and incorporate by reference the opinion and judgment of the Court of Appeals with respect to the issues described in part I of this opinion, (iii) affirm the trial court in all other respects, and (iv) remand to the trial court for further proceedings consistent herewith.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.

---

6. Because the trial court's order provided for the payment of counseling expenses that were incurred within four years following resolution of the criminal charges against husband, it was possible that payment of counseling expenses could occur after the children's twenty-first birthday.