**In re the Marriage of Pamela Cherie RUSSELL, Appellant–Petitioner,**

v.

**Charles Thomas RUSSELL, Appellee–Respondent.**

No. 41A01–9708–CV–255.

Court of Appeals of Indiana.

April 23, 1998.

Elizabeth A. Gamboa, Indianapolis, Richard A. Mann, Mann & Deeter Indianapolis, for Appellant–Petitioner.

Michael Cheerva, Phelps & Fara, Indianapolis, for Appellee–Respondent.

## OPINION

SULLIVAN, Judge.

Appellant, Pamela Cherie Russell (Pamela), appeals the Order on Petition to Enforce Decree entered by the trial court which allocated newly discovered marital debts existing at the time of dissolution, but not considered in the property distribution decree.

We affirm.

Pamela presents essentially two issues upon appeal, which we restate as follows:

(1) Whether the trial court erred by improperly modifying the dissolution decree's property distribution by allocating newly discovered debt not originally considered as part of the marital estate.

(2) Whether the trial court erred in declining to award attorney fees incurred by Pamela in seeking to enforce the decree.

We hold that, during the time for filing of a Motion to Correct Errors or an Ind. Trial Rule 60 motion, a trial court has jurisdiction, as well as the discretion, to have its ultimate property distribution coincide with assets and debts actually existing at the time of dissolution. Applying this principle, the trial court's order constituted a permissible modification of the property settlement in light of the newly discovered debts of the marital estate. Also, the trial court's decision not to award attorney fees was proper.

Pamela and Charles Thomas Russell (Charles) were granted a dissolution on January 17, 1996. Under the terms of the dissolution decree, the marital estate included NBD savings and checking accounts which amounted to $23,000. Pamela was to receive approximately twenty percent of the checking account ($1,715) and the entire savings account ($14,400), for a combined total of $16,115.

On July 30, 1996, Pamela filed a Petition to Enforce Decree and for Proceedings Supplemental. The court dismissed the Proceedings Supplemental, but permitted Pamela to proceed on her Petition to Enforce Decree. After a hearing, on April 18, 1997, the court entered an Order on Petition to Enforce Decree, which stated in pertinent part:

"2. On October 25, 1994, the date of filing the Petition For Dissolution Of Marriage, Pam had in her possession a total of $23,000.00 in cash. This sum consisted of money from the family checking and savings accounts. The source of these funds was Tom's income.

3. Shortly after the date of filing, Pam redeposited $2,000 into a checking account which was utilized by Tom and Pam to pay certain obligations of this marriage which were for the support of Pam and the children.

4. On December 13, 1994, the parties met and as the result of the exchange of information created a preliminary order which required Pam to place back into a joint account $14,960+ from the funds that she had in cash in her possession at the date of filing. Tom was to be permitted to withdraw funds to pay lease payments on Pam's Jeep, November and December rent of wife's rental house, REMC Electric, Brandy's IU tuition and fees (see husband's Trial exhibits 6 and 7), Royal Oak Country Club, insurance on cars, Pam's cellular phone bill and any monies needed to close on the parties' new residence.

5. $14,460 was redeposited into an account. Pam kept $6,540....

6. After the funds were placed into the account, Tom withdrew monies to pay outstanding bills for December [1994] as well as bills that were in existence on the date of filing.... The total bills Tom paid were $7,956.00 of which $3,408.61 was due or incurred to be paid at the date of filing.

7. In addition to the $7,956, Tom paid homeowners insurance to close the house of $578.00 which was a marital obligation on the date of filing. Tom made cash withdrawals of $900.00 for personal use as well as the $2000 which the parties used for ongoing obligations. He also withdrew closing costs on the new house of $4,144.67. The total amount spent by Tom was $15,578.67 (see exhibit 1). Of this amount, debt or obligations in existence on the date of filing of the dissolution but not taken into consideration in the decree was

$3,986.61 (homeowner's insurance—$578.00, Brandy's tuition—$2,705.80, Royal Oak Country Club—$100.00, Pam's cell phone bill—$602.81).

8. From the $23,000 that the court has taken into consideration as an asset of the marriage, Pam has already received $6,540 in cash.

9. The court's order of January 17, 1996 required Pam to receive from the $23,000 [a] total of $16,155.15. Pam has received the $6,540 cash and a check from Tom of $3,965.40.

10. The court finds that of the $23,000 that should have been distributed, the court did not consider premarital debt totaling $3,986.61. Therefore, available for distribution is $19,013.39. Pam was to receive 70% of these funds or $13,309.37. Pam has received $10,505.40. Tom should pay to Pam a total of $2,803.97.

12. Each party should pay his or her own attorney fees." Record at 108–111.

## MODIFICATION

Pamela contends the April 18, 1997 order, which took into consideration premarital debt not considered by the court in its original property distribution, constituted an improper modification of the divorce decree. We disagree.

The trial court originally determined that the NBD checking and savings accounts had a combined balance of $23,000, of which Pamela was to receive approximately seventy percent or $16,155.15. In its Order on Petition to Enforce, the court determined the combined balance to be $19,013.39 after subtracting the newly discovered premarital debt of $3,986.61. Pamela was to receive approximately seventy percent of the new combined balance, or $13,309.37, which was $2,845.78 less than what was contemplated by the original decree. The difference of $2,845.78 represents approximately seventy percent of the newly discovered premarital debt. Therefore, the court essentially ordered Pamela to bear seventy percent of the newly discovered premarital debt.

Pamela first asserts the trial court lacked authority to modify the decree because neither party filed a motion for relief from judgment under T.R. 60(B). We reject this argument, noting Pamela's Petition to Enforce requested that Charles be examined as to how he would pay her the proceeds from the NBD accounts. In ruling upon her own petition, the court found that newly discovered marital debts in existence at the time of dissolution, but not taken into consideration in the decree, had been paid by Charles through funds withdrawn from the NBD accounts, and reduced the amount the decree had ordered Pamela to receive from the accounts.

■ While the appropriate method for obtaining relief from judgment is still the filing of a Motion for Relief from Judgment under T.R. 60, the lack of such a filing, in this instance, did not bar the trial court from exercising its authority regarding property distribution. However, today's decision should in no way suggest that Petitions to Enforce are an appropriate substitute for Motions for Relief from Judgment when seeking relief under T.R. 60.

■ Pamela next argues that the trial court's disposal of the marital debt constituted an impermissible modification of a property settlement. We disagree. A dissolution court retains exclusive jurisdiction to determine the appropriate division of marital property where no disposition has been made or where a disposition has been made, but a party subsequently discovers the existence of an asset not described and set forth in the property settlement. *Johnson v. Johnson* (1991) Ind.App., 575 N.E.2d 1077, 1080 (citing *Anderson v. Anderson* (1979) Ind.App., 399 N.E.2d 391, 401).

While *Johnson* arguably mischaracterizes the holding in *Anderson,* we nonetheless agree that a dissolution court retains exclusive jurisdiction to determine the appropriate division of marital property where a party subsequently discovers the existence of an asset not described and set forth in the property settlement. In concert with its exclusive jurisdiction regarding the division of property, logic dictates that a trial court must be able to adjust a property division to reflect the existence of newly discovered assets or debts existing at the time of dissolu-

tion. If it were otherwise, a trial court would be required to enforce a property division which the court knew to be inconsistent with the dissolution decree's intended distribution scheme. Such adjustments are within the small range of permissible modifications which coincide with the trial court's jurisdiction and discretion regarding property settlements.

Pamela cites *DeBoer v. DeBoer,* (1996), Ind. App., 669 N.E.2d 415, 426, *trans. denied,* for the proposition that no matter how insignificant the modification may seem, the trial court may not revise or modify the property distribution order.

In *DeBoer,* the trial court, when ruling upon the wife's contempt petition, ordered the wife to turn over videotapes which were not specifically referred to in the original decree. However, the decree did incorporate an Agreement which stated that all personal property had been divided in accordance with the parties' wishes. In reversing the trial court's decision, this court reasoned that, due to the language contained in the Agreement, it may be presumed that all the personal property was disposed of within the original order. Therefore, despite the fact that the tapes were not specifically addressed by the decree, the trial court's order constituted an improper modification of a property settlement.

The modification ordered in our case is distinguishable from the modification in *DeBoer* in two significant respects. First, the NBD bank accounts, unlike the videotapes, were specifically referred to in the dissolution decree. Second, if the court had not adjusted the amount Pamela was to receive from the bank accounts under the terms of the decree, it would have resulted in a property distribution which was neither anticipated nor intended.

In *Eyler v. Eyler,* (1986) Ind., 492 N.E.2d 1071, 1076, the Indiana Supreme Court held that the trial court did not abuse its discretion in amending the distribution of personal property. The Court held that by amending the distribution of assets, the trial court merely effected a property division consistent with the logic and effect of the evidence before the court. *Id.*

■ In *Eyler,* the husband received personal property marked by yellow pen on an appraisal list, pursuant to the original distribution. When ruling upon a motion to correct error, the trial court stated that the original decree had actually reversed the intended distribution of assets and amended the distribution so that the wife was awarded the items marked by yellow pen. One example that the original distribution was not consistent with the intended distribution of property was that the court awarded the wife's golf clubs to the husband, and the husband's golf clubs to the wife. In reaching its decision, the court must have recognized that, whatever animosity might have existed between the parties, neither spouse would purposely create a situation in which their golf games could have been so radically affected by the use of unfamiliar golf clubs.

In this case, after the trial court discovered the existence of new marital debts, it adjusted the property settlement to reflect the dissolution decree's intended distribution scheme. Both the trial court's action, and the reallocation of assets in *Eyler,* were permissible modifications because both resulted in property divisions that were consistent with the intent of their respective dissolution decrees. *See Brownsing v. Brownsing* (1987) Ind.App., 512 N.E.2d 878, 881 ("court may reopen dissolution proceedings to clarify and enforce a decree.").

Therefore, we hold the trial court's order constituted a permissible modification because it ensured that the ultimate property distribution coincided with the assets and debts actually existing at the time of dissolution. While diminishing the amount of marital assets available for distribution, the modification did not alter the manner in which those assets were to be allocated. In fact, because the modification more accurately reflected the assets and debts existing at the time of dissolution, it resulted in a property distribution more consistent with the decree's intent. However, we caution that today's decision should not be read too broadly, and merely recognizes that a trial court, when presented with evidence of newly discovered assets or debts, has the ability to

engage in permissible modifications in order to ensure that its property settlement is consistent with the dissolution decree's intended distribution scheme. It remains true that strong policy favors the finality of marital property divisions. *See Dusenberry v. Dusenberry* (1993) Ind.App., 625 N.E.2d 458, 461.

### ATTORNEY FEES

Under I.C. 31–1–11.5–16 (Burns Code Ed.Supp.1996),[1] a trial court may award attorney's fees at any stage of the dissolution proceeding. *Maloblocki v. Maloblocki* (1995) Ind.App., 646 N.E.2d 358, 364. A trial court enjoys broad discretion in assessing attorney's fees in dissolution cases. *Quillen v. Quillen* (1996) Ind., 671 N.E.2d 98, 103.

Pamela argues that an award of fees is mandated due to the disparity of income between the parties. While disparity of income may be considered in awarding attorney fees, a trial court is not required to award fees based on disparity of income alone. There is no abuse of discretion for the trial court not to do that which it is not required to do. *Maloblocki, supra* at 364.

We affirm the judgment of the trial court.

FRIEDLANDER and KIRSCH, JJ., concur.

---

1. The current attorney fee provision now appears at I.C. 31–15–10–1 (Burns Code Ed.Repl.1997), effective July 1, 1997.