## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2019, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of A.F. (Minor Child) and J.B. (Mother); | April 2, 2019 |
| | Court of Appeals Case No. 18A-JT-1647 |
| J.B. (Mother), | Appeal from the Montgomery Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Harry A. Siamas, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 54C01-1712-JT-340 |
| *Appellee-Petitioner* | |

**May, Judge.**

[1] J.B. ("Mother") appeals the termination of her parental rights to A.F. ("Child"). Mother argues termination is not in Child's best interests. We affirm.

# Facts and Procedural History

[2] Child was born to Mother and J.A. ("Father")[1] on July 20, 2016. At the time of Child's birth, the Department of Child Services ("DCS") received a report that Mother tested positive for opiates when Child was born. On July 27, 2016, DCS removed Child from Mother's care because Father overdosed on heroin and Mother would not tell DCS where the family lived. DCS placed Child with Child's maternal grandparents. On July 29, 2016, DCS filed a petition to declare Child a Child in Need of Services ("CHINS") based on Mother's drug use, the fact she would not tell DCS where the family lived, and the voluntary termination of her parental rights to another child in 2013.

[3] On August 11, 2016, Mother admitted Child was a CHINS and the trial court adjudicated Child as such on September 22, 2016. The trial court also held a dispositional hearing on September 22, 2016, and ordered Mother to complete the following services: substance abuse assessment, random drug screens,

---

[1] J.A., Child's father, consented to the termination of his parental rights and does not participate in this appeal.

counseling, and supervised visitation with Child. Mother was never in compliance with services.

[4] Between August 2016 and March 2017, Mother tested positive for marijuana eleven times. Mother tested positive for methamphetamine on June 5, 2017, July 3, 2017, and July 7, 2017. Mother tested positive for opiates on June 16, 2017, and June 29, 2017. Mother refused to take a drug screen multiple times despite being ordered to do so by the court.

[5] Between August 2016 and October 2017, Mother was offered fifty-nine appointments for substance abuse and mental health counseling. She attended only forty of those appointments. Mother last visited with Child on July 3, 2017. On August 6, 2017, Mother was arrested for violating her probation on an earlier conviction by committing another crime, Level 6 felony possession of a narcotic drug. On November 27, 2017, Mother was convicted of Level 6 felony possession of a narcotic drug and sentenced to 728 days probation. She was then admitted to Amethyst House, an in-patient drug rehabilitation center. Mother was unsuccessfully discharged from the program on January 22, 2018, for violation of the center's zero fraternization policy. Mother relapsed into drug use shortly thereafter. Mother went to another drug rehabilitation center, Harbor Lights, after she left Amethyst House, but left after one day.

[6] On December 4, 2017, DCS filed a petition to involuntarily terminate Mother's parental rights to Child. On February 14, 2018, Mother was admitted to the Seeds of Hope drug recovery facility, where she was actively engaged in

treatment at the time of the fact-finding hearings. The trial court held fact-finding hearings on DCS's termination petition on March 2, 2018, and June 1, 2018. On July 10, 2018, the trial court entered an order involuntarily terminating Mother's parental rights to Child.

# Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights

may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id*. at 836.

[9] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[10] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of*

*Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."[2] *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208. Mother argues the involuntary termination of her parental rights is not in Child's best interests.

[11] In determining what is in Child's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *See In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[12] In its order, the trial court concluded:

---

[2] Herein, Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

40. The DCS has proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied. The child was removed from her parents on July 27, 2016. The DCS has offered reunification services to both parents but neither parent was able to participate in these services in order to overcome their parenting deficits. Father consented to termination of his parental rights. Mother failed to take advantage of reunification services offered to her. She continued an unstable lifestyle. She continued to abuse drugs. At the time of the termination hearing it is true that mother was doing well in her rehab treatment at Seeds for Hope and she should be commended for maintaining her sobriety and employment. However, she has not had the responsibility to care for Child since Child was five weeks old. Mother has not seen the child since July 3, 2017. Mother's absence from Child's life is due to her inability to maintain a stable, sober life. She has had frequent drug abuse interventions in the past and she relapsed every time. Hopefully this time will be different. Unfortunately, Child cannot wait. Child has been cared for and nurtured by others for the past two years. Child would not recognize mother as her parent.

41. The DCS has proven by clear and convincing evidence that termination is in the best interests of the child. Neither parent is in any better position to provide the child with appropriate care, supervision or a safe, nurturing and stable home than they were at the beginning of DCS' involvement with the family. Neither parent can meet the child's needs. Both the DCS case manager and the CASA believe that termination is in the bet interest of the child.

(App. Vol. II at 11) (errors in original). Mother argues, based on her recent progress with substance abuse treatment at Seeds of Hope and current

employment, that termination of her parental rights is not in Child's best interests.

[13] However, as the trial court noted, Child cannot be left in a state of parental instability indefinitely. *See In re G.Y.*, 904 NE.2d 1257, 1265 (Ind. 2009), ("Permanency is a central consideration in determining the best interests of a child."), *reh'g denied*. Additionally, termination being the Child's best interests is supported by the testimony of the Court Appointed Special Advocate ("CASA") who said Child was "clean, healthy, happy and very well cared for and loved" by maternal grandparents, with whom she had been placed since she was removed from Mother's care. (Tr. Vol. II at 90.) *See A.F. v. Marion Cty. Office of Family & Children*, 762 NE.2d 1244, 1253 (Ind. Ct. App. 2002) (termination in child's best interests in part because child was thriving in foster placement), *trans. denied*. Mother's arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

[14] DCS presented evidence to support the trial court's findings, which support the trial court's conclusion that the involuntary termination of Mother's parental rights was in Child's best interests. Accordingly, we affirm.

[15] Affirmed.

Mathias, J., and Brown, J., concur.