**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**CRAIG JONES**
DCS, Tippecanoe County Office
Lafayette, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
Aug 13 2012, 9:41 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF D.Y., Minor Child, | ) ) ) ) | |
| M.Y., Mother, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 79A02-1112-JT-1121 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta H. Rush, Judge
Cause No. 79D03-1108-JT-102

**August 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

M.Y. (Mother) appeals the termination of her parental rights to D.Y. (Child).[1]  We affirm.

## FACTS AND PROCEDURAL HISTORY

D.Y. was born on August 5, 2009, to Mother and J.C. (Father).  At that time, Mother was fifteen years old, and Father was thirty-five years old.  On April 26, 2010, Mother was arrested while on juvenile probation.  The Department of Child Services (DCS) immediately detained D.Y. because Mother was incarcerated, D.Y.'s father was at the time unknown, Mother's family had an extensive history with DCS, and no other relative was available to care for D.Y.

On May 26, D.Y. was adjudicated a Child in Need of Services (CHINS).  The trial court ordered Mother to, among other things, participate in visitation with D.Y., obtain and maintain safe housing, obtain and maintain a legal and stable source of income, establish D.Y.'s paternity, participate in therapy and parenting services, abstain from the use of drugs or alcohol, complete a medical assessment, and take her medication as directed.  On February 4, 2011, the trial court found Mother in contempt for testing positive for alcohol, and on February 25, the trial court found Mother in contempt because she did not attend visitation with D.Y.  Mother was ordered to perform forty hours of community service.

On August 5, DCS petitioned to terminate Mother's parental rights to D.Y.  On

---

[1] As Father does not participate in this appeal, we address only those facts relevant to the termination of Mother's parental rights.

October 31, the trial court held an evidentiary hearing, and on November 14, the trial court terminated Mother's parental rights to D.Y.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding

3

a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State is required to allege and prove:

(2) The petition must allege:
    (A) that one (1) of the following is true:
        (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
        (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
        (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
    (B) that one (1) of the following is true:
        (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
        (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
        (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
    (C) that termination is in the best interests of the child; and
    (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds

4

the allegations in the petition are true, the court must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Mother challenges the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Ind. Code § 31-35-2-4(b)(2).

### 1. Reasonable Probability Conditions will not be Remedied

Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *See In re L.S.*, 717 N.E.2d at 209. The trial court found the conditions that resulted in D.Y.'s removal would not be remedied.

In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are

5

permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Regarding the reasonable probability the conditions that resulted in D.Y.'s removal would be remedied, the trial court found:

> The Court finds, as a matter of law, that after more than eighteen (18) months of rendering services of various kind with different providers to this family that there is not any basis for any reasonable belief that the circumstances which resulted in the removal of the child from parent's [sic] care or the reasons for continued placement outside the home will be remedied. Mother has demonstrated a continuing pattern of noncompliance with her services. Mother does not indicate that she has a basic understanding or belief of the harm her child has suffered given her choices and instabilities in her own life. Mother and Father, therefore, is [sic] unable to provide a minimally safe, secure, and stable home for the child.

(App. at 23.) Mother argues she

> loves D.Y. very much. She has always exhibited patience, affection, love and given good care to her daughter during visitations. It is not unreasonable to put in extra time, with a few well-chosen service providers, to work with a mother who was herself a child when her baby was born, and is still very young. With more help, and away from unhealthy influences, [Mother] can remedy the conditions that resulted in D.Y.'s continued placement outside her mother's care.

(Br. of Appellant at 17.)

D.Y. was originally removed from Mother's care because Mother was arrested and no family members could care for D.Y. While it is true Mother has not again been arrested during the pendency of these proceedings, she continues to make poor choices that impact her ability to care for D.Y. Mother does not consistently take the medicine prescribed for her mental illness, and she often misses therapy appointments when she is not on her medication.

6

While Mother was employed off and on throughout the proceedings, she was unable to maintain employment for more than a few months at a time. She had just recently obtained stable housing for her and D.Y. after spending a good portion of the proceedings being relatively transient. Mother consistently avoided questions or was dishonest about her relationship with Father, who is twenty years her senior. Finally, Mother was found in contempt twice as part of the CHINS case, once for missing visits and once for consuming alcohol.

Based on her failure to comply with services and evidence of her continued poor life choices, we cannot agree that the trial court erred in determining the conditions that resulted in D.Y.'s removal will not be remedied.[2]

2.      Best Interests of Child

In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child. *Id*. Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and

---

[2] Mother also challenges the juvenile court's conclusion there is a reasonable probability the continued parent-child relationship poses a threat to D.Y.'s well-being, pursuant to Ind. Code § 31-35-2-4(b)(2)(B)(ii). However, as Ind. Code § 31-35-2-4(b)(2)(B) requires only one of the three factors in that section be satisfied, and there was sufficient evidence to support a finding under Ind. Code § 31-35-2-4(b)(2)(B)(i), we need not address Ind. Code § 31-35-2-4(b)(2)(B)(ii). *See*, *e.g*., *In re L.S.*, 717 N.E.2d at 209.

convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

The trial court found "it would not be in the best interests of the child to try to reunite this family." (App. at 23.) Mother argues the current placement plan, adoption by Father's relatives, is "troubling," (Br. of Appellant at 22), and that she and D.Y. "share a unique and special bond that cannot be replaced." (*Id*. at 24.) However, both Mother's family case manager and her probation officer testified, based on Mother's history of missed visits with D.Y. and her failure to take advantage of the offer of additional visits, Mother was not capable of providing full-time care for D.Y.

D.Y. has lived foster care for most of her life. While Mother eventually may mature into an appropriate parent, we cannot deny D.Y. the permanency that is essential to her development and well-being. *See McBride*, 798 N.E.2d at 192-93 (child's need for permanency cannot be delayed by possibility parent will eventually be able to care for child). Based on the evidence, the trial court did not err when it found termination of Mother's rights was in D.Y.'s best interest.

## CONCLUSION

The trial court did not err when it terminated Mother's parental rights to D.Y. because there was a reasonable probability the conditions that resulted in D.Y.'s removal would not be remedied and termination was in D.Y.'s best interests. Accordingly, we affirm.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.