## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 04 2016, 5:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.L. & K.L. (Children) and J.L. (Father); | May 4, 2016 |
| | Court of Appeals Case No. 35A02-1510-JT-1750 |
| J.L. (Father), | Appeal from the Huntington Circuit Court |
| *Appellant-Respondent,* | The Honorable Thomas M. Hakes, Judge |
| v. | Trial Court Cause No. 35C01-1409-JT-8 35C01-1409-JT-9 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**May, Judge.**

[1] J.L. (Father) appeals the involuntary termination of his parental rights to his children, Jo.L. and K.L. (Children). He argues there was insufficient evidence to support the termination. We affirm.

## Facts and Procedural History

[2] N.C. (Mother) and Father are the biological parents of Jo.L., born on May 12, 2007, and K.L., born on November 5, 2010. The Children were removed from Mother and Father's care on May 29, 2013, and placed in foster care. They were adjudicated Children in Need of Services (CHINS) on June 20, 2013,[1] based on the following: the family case manager found unsanitary home conditions; there were problems with the Children's school attendance; Mother was using prescription drugs without a prescription and consuming alcohol with the prescription drugs; Mother and the Children were found in a vehicle that was parked on the side of the road with Mother asleep at the wheel and the Children soiled;[2] and Father was unable to care for the Children due to his incarceration. Father was incarcerated on May 14, 2013, for twenty days after pleading guilty to driving while suspended with a prior judgment and operating a motor vehicle without ever receiving a license.

---

[1] At the beginning of the CHINS proceedings, Mother and Father were in a relationship together. They separated at some point during the CHINS proceedings and are no longer together.

[2] Mother's other child, A.W., was also in the vehicle. A.W. is the Children's half-sibling. In November 2013, the Indiana Department of Child Services placed A.W. in the care of her father.

On July 23, 2013, the trial court held a dispositional hearing and issued a decree that (among other things) directed Father to complete home-based parenting instruction and attend supervised visitations with the Children at a youth service bureau until his home was found to be in a safe and sanitary condition. The court held a progress hearing on November 22, 2013, at the conclusion of which the court found in relevant part, "[F]ather has not completely enhanced his ability to fulfill her [sic] parental obligations," (Exhibit 20, first page), and "the cause of the children's out-of-home placement . . . has not been alleviated," (*id.*, second page).

On May 7, 2014, the trial court held a hearing on a proposed permanency plan.[3] In its order issued on that same day, the court found that reunification efforts had been hindered by Mother and Father's actions and, specifically:

> Father has been slowly renovating his home to make it safe for the children to reside. Father has struggled to keep the home in a clean environment for the children. Father has also struggled with his temper. Father has been unwilling to address his anger issues in which he continues to yell and curse at the [Family Case Manager] in front of the children. Father has admitted to the use of marijuana and prescription narcotics without a valid prescription but doesn't feel it affects his children.

---

[3] Of the permanency plan options available, the court found it "most appropriate and consistent with the best interest of the children to: work toward [reunifying the Children and their parents] with a concurrent plan of Termination of Parental Rights," if Mother and Father were not able to meet certain requirements and make their home safe for trial home visits by August 29, 2014. (*See* Exhibit 21, second page, paragraph 11.)

(Exhibit 21, second page, paragraph 9) (errors in original). The court then modified its dispositional decree, ordered Father to participate in substance abuse assessment and submit to random drug screens, and approved the proposed permanency plan of reunification concurrent with a plan for termination of parental rights.

[5] On May 29, 2014, Father was charged with operating a vehicle as an habitual traffic violator and possession of marijuana. On June 5, 2014, Father committed a separate violation and was charged with operating a vehicle as an habitual traffic violator. Father pleaded guilty to all charges and was sentenced on September 16, 2014, to one year and 183 days with 60 days executed and the remainder served on probation. Father's probation was revoked on November 25, 2014, because he tested positive on a drug test. He was ordered to serve six months of jail time. (Tr. at 150; Exhibit 7.)

[6] On September 23, 2014, DCS filed a petition to terminate Mother and Father's parental rights. The trial court held another progress hearing on November 7, 2014, and issued an order finding in relevant part:

> The children's Father has partially complied with the case plan. DCS does have continued concerns as to whether Father will be able to maintain his current progress long-term to gain financial stability to care for himself and his children. This is particularly so when Father has expressed that he intends to move out of his parents' home and into the home of a friend who was previously known to be a marijuana user.
>
> . . .

[ ]The parents have not enhanced their ability to fulfill their parental obligations.

. . . Father has regularly visited the child [sic].

. . . Father has cooperated with DCS since his release from jail in September 2014.

. . .

[ ] The cause of the children's out-of-home placement or supervision has not been alleviated.

(Exhibit 22.)

The court conducted evidentiary hearings on April 9 and July 16, 2015, on DCS's petition to terminate Mother and Father's parental rights. On September 14, 2015, the court issued its findings of fact, conclusions of law, and order terminating Father's parental rights.[4]

## Discussion and Decision

Father argues the Department of Child Services (DCS) did not present sufficient evidence to support termination of his parental rights because he made a "good faith effort to comply with [court ordered] services" (Appellant's Br. at 11), and "one [child-services] provider characterized [Father] as being a good parent when he was not incarcerated." (*Id.* at 8).

---

[4] Mother's parental rights were not terminated.

[9] We review termination of parental rights with great deference. *In re K.S., D.S., B.G., and J.K.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied, trans. denied, cert. denied sub nom. In re Swope*, 534 U.S. 1161 (2002).

[10] When a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] Father does not challenge any findings of fact. As Father does not challenge the findings of fact, they stand as proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (when father did not challenge specific findings, court accepted them as true).

[12] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his parental responsibilities. *Id*. at 836.

[13] To terminate a parent-child relationship, the State must allege and prove:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2012). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8 (2012).

[14] In its September 14, 2015 order terminating Father's parental rights, the juvenile court found the Children had been removed from Father for at least six months. The court found Father did not complete the home based parenting program or substance abuse therapy because he was in and out of jail. The court also found Father had "no car, no home, and . . . no employment." (Appellant's Brief at 16.) The court referenced testimony from the termination hearing that it was in the Children's best interests to terminate Father's rights because "the reasons for placement outside the home [would not] be remedied and the continuation of the parent-child relationship pose[d] a threat to the

[Children's well-being]" due to "Father's anger issues, continued drug issues[,] and Father's ongoing incarceration." (*Id*.) The court also noted Father had failed to pay child support.

[15] In its conclusions of law, the court determined Father had not taken advantage of opportunities to better himself or DCS-offered services, and "remaine[d] unable to care for the Children." (*Id*. at 17.) The court "considered whether retaining Father's rights to allow for payment of child support would be enough benefit to the Children to not grant the termination," but ultimately determined Father's inability to pay support would not change. (*Id*.)

[16] In support of his sufficiency argument, Father directs us to the testimony of Nicole Fordyce who was employed as a rehabilitation services provider and worked with Father when he was not incarcerated "on parenting skills, a little bit of anger management, employment, and making sure he had stable housing and resources." (Tr. at 338.) Father asks us to find the evidence insufficient to support the termination of parental rights because Fordyce testified Father "never got angry with [her]," (*id*.); Fordyce did not have to "step in" and "intervene or coach" Father during supervised visitation, (*id*.); Father appropriately disciplined the Children during supervised visitation; and Father was "open" to parenting "ideas and curriculum" presented by Fordyce. (*Id*.)

[17] Fordyce also testified "[a]t team meetings [Father] got a little angry," (*id*. at 338); regarding parenting skills, "[Father] did well when I was there," (*id*.); Father was not able to secure a job; and Father did not meet with Fordyce on a

consistent basis due to his incarceration. Additional evidence was presented that Father was unable to complete parenting instruction class or substance abuse therapy because he was in and out of jail during the juvenile court proceedings; he was very slow in bringing the home where he resided into a habitable condition; he was forced to move from the home;[5] he lost his driving privileges; he continued to use drugs; he was unemployed; and he was incarcerated at the time the April 9, 2015 termination hearing took place.

[18] We acknowledge Fordyce's testimony suggests Father has made good faith efforts to comply with court ordered services. But the juvenile court, acting as a trier of fact, was not required to believe or assign the same weight to Fordyce's testimony as does Father. *See Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949). There was sufficient evidence to support the juvenile court's determination that Father's parental rights should be terminated. Father's claims to the contrary effectively amount to an invitation to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re D.D.*, 804 N.E.2d at 265.

---

[5] The home where Father resided belonged to his grandfather. Father's grandfather passed away and the home was sold by his grandfather's estate. (Tr. at 124-25.)

# Conclusion

[19] Based on the record before us, we cannot say that the juvenile court's termination of Father's parental rights to the Children was clearly erroneous. We affirm the juvenile court's judgment.

[20] Affirmed.

Baker, J., and Brown, J., concur.