## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2017, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of A.M.F. and L.F.F. (Minor Children), | October 10, 2017 |
| | Court of Appeals Case No. 40A01-1705-JT-1106 |
| J.F. (Father), | Appeal from the Jennings Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Jon W. Webster, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 40C01-1608-JT-38 40C01-1608-JT-393 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

J.F. ("Father")[1] appeals the trial court's termination of his parental rights over his minor children A.M.F. and L.F.F. ("the Children"). Father raises a single issue for our review, which we restate as the following two issues:

1. Whether the trial court clearly erred when it concluded that Father would not remedy the conditions that resulted in the Children's removal.

2. Whether the trial court clearly erred when it concluded that termination of Father's parental rights was in the Children's best interests.

We affirm.

# Facts and Procedural History

On January 23, 2014, the trial court entered a dispositional decree in which it ordered the Children removed from Father's care and custody. On August 15, 2016, the Indiana Department of Child Services ("DCS") filed a petition to terminate Father's parental rights. In January and February of 2017, the court held a fact-finding hearing on the DCS's petition.

Following that hearing, the court entered the following findings of fact, which are not disputed on appeal:

---

[1] The Children's mother, C.F. ("Mother"), does not participate in this appeal.

7.     On August 29, 2012, the DCS completed a home visit at Mother and Father's residence to visit [A.M.F.'s] sibling[,] as there was still an open case regarding that child, and noticed that the house was very messy.  Father was also acting very erratically.  The [Family Case Manager or "FCM"] drug screened Mother and Father at that time.  Mother and Father both tested positive for morphine and hydromorphone. . . .

* * *

9.     [A.M.F.] was then removed from Mother and Father on November 1, 2012, due to the fact that Mother and Father were unable to be located and they had left the child in the care of her maternal grandmother.  At that time, the DCS could not insure the child's safety.

10.     [L.F.F.] was removed on March 15, 2013, after she was born a drug[-]exposed infant.

11.     Father tested positive for amphetamine and methamphetamine on March 18, 2013.

12.     Father was then arrested on June 19, 2013.  Father was convicted of Dealing Methamphetamine, a class B[] Felony.  Father's sentence was to include programs related to purposeful incarceration.

13.     A fact-finding hearing was held on July 16, 2013.  Mother and Father both appeared with counsel and admitted that they had substance abuse issues that inhibited their ability to properly care for their children at that time.

* * *

16.    After the Dispositional Decree of January 23, 2014, the [C]hildren were never returned to the parents' care and custody.

* * *

38.    While Father was incarcerated, he did not complete any services regarding reunification with his [C]hildren.  Father stated that he was placed on a waiting list for a "better parent class" but was never able to participate or complete said service.

39.    Father did participate in a class regarding his substance abuse while incarcerated[;] however, he was dismissed from said program because he was disciplined by the facility for possession of an unlawful medication in May of 2014.

40.    Father was also disciplined in June of 2015 for use of [a] controlled substance, specifically suboxone, during his incarceration.

41.    Father was again disciplined during his incarceration in June of 2016 for drinking alcohol.

* * *

44.    Family Case Manager[] Jorrica Youngblood[] believes that adoption is in the [C]hildren's best interests.  The Guardian Ad Litem [("GAL")] John Nikoll also echoed that adoption and termination of parental rights is in the [C]hildren's best interests. . . .

* * *

46. Both [C]hildren are currently in the same pre-adoptive home . . . . The [C]hildren are very bonded with their pre-adoptive family. [A.M.F.] has been in said placement for four (4) years. [L.F.F.] has been in said placement for three and [one-]half years (3.5). Father has not visited with the [C]hildren since before his incarceration. . . .

\* \* \*

50. Deb Garrett, [A.M.F.'s] therapist, stated that the child is very confused about her family composition and[,] because of said confusion, the child has been exhibiting behavioral issues in pre-school and in her foster home. The child's behaviors tend to appear after visitation with her maternal grandmother . . . . Ms. Garrett opined that the child's lack of permanency is confusing her, and that prolonging the child's permanency would be detrimental for the child.

Appellant's App. Vol. 2 at 54-55, 57-59 (citations omitted). The court then concluded as follows:

51. Mother and Father both contend that more time is needed for them to complete services aimed at reunification. . . . By prolonging the family's case, which has been open since September of 2009, to allow the parents more time to participate in services, [A.M.F.] will only continue to struggle emotionally due to her confusion as to her family composition. Therefore, an extension of time for Father to complete more services will only continue to threaten the child's mental and emotional wellbeing without a guarantee that reunification will ever occur as to him, as [Father's] habitual patterns of conduct show a pattern of continued substance abuse and failure to complete reunification services.

52. Father contends that he should be allowed more time once he is released from incarceration as he has not been provided any services by the DCS. While Father's incarceration did not allow him to participate in any services referred by the DCS, his incarceration did not inhibit him from taking advantage of services aimed towards reunification offered by the [Department of Correction or "DOC"]. . . . Father has not made a "good-faith" effort to complete any required services available to him during his incarceration. Father did not avail himself of the services offered by the DOC. The one and only service Father did participate in was a substance abuse course, for which he was dismissed from participating for possession of a control[led] substance. Also, Father's continued behavior he exhibited while he's been incarcerated, including testing positive for suboxone and alcohol, shows a clear continuation of his habitual patterns of conduct.

53. Father has not enhanced his ability to parent the [C]hildren nor has he addressed his needs relating to why DCS first became involved with the family.

*Id.* at 59-60. The court then terminated Father's parental rights over the Children. This appeal ensued.

## Discussion and Decision

### *Overview*

[5] We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* However, a trial court must subordinate the interests of the

parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[6] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2017). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon following an evidentiary hearing. When a trial court's judgment contains findings and conclusions following an evidentiary hearing, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If

the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

### *Issue One: Continuation of Conditions that Resulted in Removal*

[9] Father first asserts the trial court clearly erred when it concluded that the conditions that resulted in the removal of the Children from Father's care and custody will not be remedied. In determining whether the evidence supports the trial court's conclusion that Father was unlikely to remedy the reasons for the Children's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[10] The trial court did not clearly err when it concluded that the conditions that resulted in the removal of the Children from Father will not be remedied. Father acknowledges on appeal that the Children were removed from him due to his substance abuse. Yet, following that removal, Father continued his substance abuse. In particular, in March of 2013 Father tested positive for amphetamine and methamphetamine. In June of 2013, Father was arrested for dealing in methamphetamine, and he was later convicted of a Class B felony offense. And, while in the Department of Correction, Father continued to abuse substances. In May of 2014, Father was dismissed from a substance-abuse program in the DOC due to his possession of an "unlawful medication." Appellant's App. Vol. 2 at 57. In June of 2015, Father was again disciplined by the DOC for use of the controlled substance suboxone. And in June of 2016, Father was disciplined for drinking alcohol, his third discipline while in the DOC. The trial court found that Father's history of substance abuse, especially while committed to the DOC, demonstrated "a clear continuation of his habitual patterns of conduct." *Id.* at 60.

[11] Still, Father argues on appeal that, "[w]hile [he] had a few setbacks while incarcerated, Father made a good faith effort to participate in some programs that might" have been helpful. Appellant's Br. at 16. Father also asserts that he should have been given some time after his release from his incarceration to

attempt to remedy the conditions that resulted in the Children's removal.[2] But the trial court considered and rejected both of those arguments in light of Father's pattern of conduct and the harm to the Children, and Father's arguments on appeal simply amount to a request for this court to reweigh the evidence. We will not do so. We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in the removal of the Children from Father's care will not be remedied.[3]

### Issue Two: Best Interests

[12] Father also challenges the trial court's conclusion that the termination of his relationship to the Children is in the Children's best interests. In determining what is in the best interests of the child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id.* Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Sons v. Lake Cty. Office of Family & Children (In re R.S.)*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such

---

[2] Insofar as Father asserts that Mother, whose rights the trial court did not terminate, received an opportunity that Father did not, Father's argument is not supported by cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a). The trial court's order with respect to both Mother's rights and Father's rights is incredibly detailed, and the court's order with respect to Mother is substantially different on its facts than the order as it applies to Father.

[3] Because Indiana Code Section 31-35-2-4(b)(2) is written in the disjunctive and we affirm the trial court's judgment on this issue, we need not address Father's additional argument that the trial court erred when it concluded that the continuation of the parent-child relationships posed a threat to the Children's well-being.

that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003); *see also In re G.Y.*, 904 N.E.2d at 1265 ("Permanency is a central consideration in determining the best interests of a child.").

[13] Father's only argument with respect to the Children's best interests is that he "had little opportunity to participate in services" due to his incarceration. Appellant's Br. at 21. But Father disregards his continued substance abuse during his incarceration. Moreover, the trial court expressly found that Father had not put forth a good-faith effort during his incarceration to comply with services that were available to him. Accordingly, we reject Father's argument on appeal. We also recognize that the FCM and GAL both testified that termination of Father's rights was in the Children's best interests, and the trial court found that the Children "are very bonded with their pre-adoptive family," with whom they have lived for more than three years. Appellant's App. Vol. 2 at 58. Father does not challenge that finding on appeal. We cannot say that the trial court clearly erred when it concluded that the termination of Father's parental rights over the Children is in the Children's best interests.

## Conclusion

[14]  In sum, we affirm the trial court's termination of Father's parental rights over the Children.

[15]  Affirmed.

Kirsch, J., and Brown, J., concur.