## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 30 2019, 9:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT K.C. (MOTHER)

Mark F. James
Anderson, Agostino, Keller P.C.
South Bend, Indiana

ATTORNEY FOR APPELLANT M.C. SR. (FATHER)

Ernest P. Galos
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.F. & M.C. (Children) and K.C. (Mother) and M.C. Sr. (Father);

K.C. (Mother) and M.C. Sr. (Father),

*Appellants-Respondents,*

v.

April 30, 2019

Court of Appeals Case No.
18A-JT-2265

Appeal from the St. Joseph Probate Court

The Honorable James Fox, Judge

Trial Court Cause No.
71J01-1702-JT-25
71J01-1710-JT-90

The Indiana Department of
Child Services,

*Appellee-Plaintiff*

**May, Judge.**

[1] K.C. ("Mother") and M.C. Sr. ("Father") (collectively "Parents") appeal the involuntary termination of their parental rights[1] to A.F. and M.C. Jr. (collectively, "Children"). Parents challenge the trial court's conclusion that the conditions under which Children were removed from their care would not be remedied. We affirm.

# Facts and Procedural History

[2] Mother gave birth to A.F. on August 8, 2015, and M.C. Jr. on August 21, 2016. Mother and Father are married. A.F.'s father is unknown, and Father is the father of M.C. Jr. On October 26, 2015, the Department of Child Services ("DCS") filed a petition to declare A.F. a Child in Need of Services ("CHINS")

---

[1] Father is A.F.'s stepfather, and it is not clear from the record that Father has parental rights to A.F. Nevertheless, the trial court's order terminates his parental rights to A.F., and we will review the validity of that termination without delving into whether those rights truly exist.

and removed A.F. from Mother's care based on Mother's inability to provide A.F. with proper care and A.F.'s admission to intensive care for failure to thrive. A.F. was placed in foster care, where she has remained throughout these proceedings.

[3] On February 2, 2016, the trial court held a fact-finding hearing regarding DCS's CHINS petition and granted the petition the same day. On May 19, 2016, the trial court entered a dispositional order requiring Parents to complete parenting classes, submit to psychological exams and follow all recommendations, and attend supervised visitation with A.F. A few months later, M.C. Jr. was born and diagnosed with Myotonic Muscular Dystrophy and clubbed feet.

[4] On October 5, 2016, DCS removed M.C. Jr. from Parents' care and filed a petition alleging M.C. Jr. was a CHINS based on Parents' inability to care for him, his admission to the hospital with serious health issues, and Mother's statements that she would not follow the recommended feeding instructions for him. M.C, Jr. was placed in foster care, where he has remained throughout these proceedings. On January 30, 2017, the trial court held a fact-finding hearing regarding DCS's petition as to M.C. Jr.

[5] On February 8, 2017, DCS filed a petition to involuntarily termination Parents' parental rights to A.F. On February 22, 2017, the trial court adjudicated M.C. Jr. as a CHINS. On March 15, 2017, the trial court entered a dispositional order as to M.C. Jr. that required Parents to complete the same services as were ordered in the dispositional order regarding A.F. On the same day, the trial

court suspended supervised visitation between Parents and Children because Parents were not engaging in services and were "sporadic during their visits[.]" (Tr. Vol. II at 81.) At that time, the trial court also consolidated A.F.'s and M.C. Jr.'s cases.

[6] On October 8, 2017, DCS filed a petition to involuntarily terminate Parents' parental rights to M.C. Jr. On April 27, 2018, the trial court held a fact-finding hearing regarding both of DCS's petitions for termination of parental rights. On August 20, 2018, the trial court issued an order terminating Parents' parental rights to Children.

# Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In*

*re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[10] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). Unchallenged findings are presumed correct. *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] In terminating Parents' parental rights to Children, the trial court found:

> 11. Mother was not compliant with the orders of the decree[.] [M]other failed to complete any of the items ordered by the Court;
>
> 12. During the pendency of the case [M]other has failed to comply with any of the Courts [sic] orders;
>
> * * * * *
>
> 14. Mother testified that she had failed to comply with the orders of the court due to illness;

15. Mother now asserts that she and [F]ather will be able to succeed if left to their own devices, but fails to provide any reasoning why that would change or how that would have any positive impact on [Children];

16. Mother still claims she is unable to drive or utilize public transportation;

* * * * *

18. Mother claims that family resources would now provide the assistance the family needs;

19. Mother offered no reasonable explanation as to why those resources were not utilized during the pendency of the case;

20. One of the examples of failure of the family to overcome simple changes was the fact that the home was filled with smokers that posed a threat to [M.C. Jr.] due to respiratory problems present from his birth;

21. Family smokers neither stopped nor displayed any effort to make the home fit for [M.C. Jr.];

22. Mother did not ask the DCS for assistance in smoking cessation;

23. Mother did not attempt to utilize free community resources to obtain smoking cessation.

24. Fathers [sic] testimony was not credible. Father testified that he would do anything for his child and step-child, but failed to do so while the case was pending;

25. Father had spotty employment history;

26. Father claimed that he will have a job that will allow [M]other and [F]ather to have a four bedroom home;

27. Father further testified that he had been working, had no living expenses (he and [M]other lived in his parents [sic] basement) and he only had $30.00 in the bank;

28. Father testified that it would be easy to make changes that would have allowed his child to visit in the home;

29. Father also testified that he had made no effort to do so;

30. Father stated that he could stop smoking at any time, but has not done so;

31. Father failed to work with the DCS to obtain smoking cessation;

32. Father understood that he could have taken smoking cessation classes for free in the community, but had not done so;

33. Father made no effort to stop smoking to have visits with child;

* * * * *

36. Parents irregularly attended supervised visitations;

37. Parents irregularly attended classes[.]

(Appealed Order at 2-3.)

[12] Parents argue the trial court's findings do not support its conclusion there was a reasonable probability the conditions that resulted in Children's removal from their care would not be remedied. However, Parents do not contest whether the trial court's findings support its conclusion that the continuation of the parent-child relationship posed a threat to the well-being of Children. DCS does not have to prove both threat to well-being and reasonable probability conditions will not be changed, because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that DCS must prove only one by clear and convincing evidence. *See* Ind. Code § 31-35-2-4(b)(2)(B) (listing three options and noting DCS has to prove "one"). Because Parents do not present an argument challenging the trial court's conclusion the continuation of the parent-child relationship posed a threat to Children's well-being, (*see* Appealed Order at 3), we may affirm under that portion of the statute and, thus, need not address Parents' argument that the findings do not support a conclusion that the conditions leading to removal will not be remedied. *See In re L.S.* 717 N.E.2d at 209 (because Ind. Code § 31-35-2-4(b)(2)(B) is written in the disjunctive, court needs to find only one requirement to terminate parental rights).[2]

[13] Additionally, Parents' proffered arguments including alternate reasons they did not complete services; Father's testimony that he had a job "he was about to

---

[2] Nor do Parents challenge any of the trial court's other statutorily-required conclusions.

start" that would allow the family to move into their own house, (Br. of Father at 14); Father's contention that "the record is devoid of any medical information of what the danger [of smoking in M.C. Jr.'s presence] was and the severity of the risk[,]" (*id*. at 13); and Mother's assertion that she "has made improvements, and those improvements should not be ignored[,]" (Br. of Mother at 10), are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

[14] DCS presented sufficient evidence to support the trial court's findings, which supported the trial court's conclusions and decision to involuntarily terminate Parents' parental rights to Children. Accordingly, we affirm.

[15] Affirmed.

Baker, J., and Tavitas, J., concur.