## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 17 2018, 8:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE

Jennifer A. Joas
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Paternity of A.P.,
Sarah M. Perkins,

*Appellant-Petitioner,*

v.

Brian L. Kuntz,

*Appellee-Respondent*

April 17, 2018

Court of Appeals Case No.
15A01-1709-JP-2236

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1109-JP-88

**Altice, Judge.**

### Case Summary

[1] Sarah Perkins (Mother) appeals from the trial court's order modifying Brian Kuntz's (Father) child support for the parties' minor child, A.P. (Child). Mother presents three issues for our review:

1. Did the trial court abuse its discretion in denying Mother's request for reimbursement for Father's unused visitation credits?

2. Did the trial court abuse its discretion in granting Father credit for ninety-eight overnight visits in calculating his current support obligation?

3. Did the trial court abuse its discretion in failing to account for Mother's prior born children in calculating Father's child support obligation?

We affirm in part, reverse in part, and remand.

## Facts & Procedural History

Child was born on September 15, 2011, and Mother filed a Petition to Establish Paternity shortly thereafter. A Paternity and Support Order was entered on January 12, 2012, pursuant to which Father was ordered to pay child support and granted parenting time. In the order, the court noted that Father was living with Mother a "majority of the time & cares for [C]hild while [Mother] works. Split time w/ [C]hild." *Appellant's Appendix Vol. 2* at 19. In light of this arrangement, the court credited Father with 185 overnight visits in calculating his child support obligation. The court also noted that Father had contributed to Mother's monthly bills, paid Child's daycare expenses, and purchased diapers and other necessities for Child.

In a May 17, 2012 order on a motion to correct error, the court noted that the parties agreed to joint legal custody with Mother having primary physical custody and clarified that Father could exercise parenting time at his home.

The court also determined that, at that time, there was no need to modify Father's credit for overnight visits.

[5] After Father's paternity of Child was established, Father spent a great deal of time at Mother's home, often caring for Child while Mother worked second shift, and for a short period of time, the night shift. Father would pick Child up from daycare and would stay at Mother's home until three or four in the morning[1] when he would return to his home to get ready for work. This arrangement continued until May 2012, when Mother began working the day shift. Thereafter, Father visited with Child in the evenings. During this time, Child did not spend the night at Father's home. Mother claimed that Father cared for Child only at her house because Father's family did not acknowledge Child's existence. Father, who was still legally married to his wife with whom he shared two children, claimed that Mother did not want him to take Child to his home. Father first exercised overnight visitation in his home with Child in October 2014. Father began exercising alternating weekend visitation with Child in 2015.

[6] Following Child's birth, Mother and Father had an on-again, off-again relationship. Initially, Father essentially lived with Mother. In addition to child support, Father contributed to Mother's living expenses and paid for childcare. After an apparent parting of ways, they "got back together briefly" in

---

[1] Mother testified that she "didn't tell [Father] to leave but [she] didn't tell him to stay either." *Transcript* at 48.

October 2014 and again in October 2015. *Transcript* at 62. In late 2015, Mother rebuked Father's attempt to "hook back up again" and in February 2016, Mother told Father to leave her house. *Id*. Thereafter, their relationship deteriorated. As reported by the Guardian ad Litem (GAL), Mother and Father continue to harbor "extreme animosity" for one another, making communication between them difficult. *Id*. at 6.

[7] On March 23, 2016, Father filed a petition to modify custody and support. On August 1, 2016, Mother filed her petition to modify support along with a request for a refund for Father's unused visitation credits. The trial court held a hearing on the pending motions on February 28, 2017. On April 4, 2017, the court issued its order modifying Father's child support obligation retroactive to March 23, 2016, the day Father filed his petition. In modifying Father's child support obligation, the court included a parenting-time credit for ninety-eight overnights, which accounts for the court's order that Father exercise parenting time in accordance with the Indiana Parenting Time Guidelines (the Guidelines). The court also determined that Father "misrepresented and understated" his weekly gross income in 2011 and that, had the court been accurately informed, its judgment would have been different. *Appellant's Appendix Vol. 2* at 9. The court therefore invoked its equitable jurisdiction and recalculated Father's child support obligation based on Father's actual income

in 2011 and the years that followed, resulting in an arrearage for Father.[2]  While the court granted Mother's requested relief in this regard, the court was "not inclined to make adjustments" in the form of a refund or restitution to Mother for the parenting-time credit Father received for overnight visits which Mother claimed he did not exercise.  *Id.*

[8]  On May 4, 2017, Mother filed a motion to correct error challenging the court's order in several respects.  Specifically, Mother argued that the court abused its discretion (1) by failing to order Father to make restitution to her for underpaid child support that stemmed from the credit granted him for overnight visits and (2) by overstating Father's parenting-time credit in calculating Father's modified child support obligation.  She also argued that the trial court erred when it left out of its current child support computation a sum attributable to Mother's legal duty to support her prior born child.

[9]  The court held a review hearing as well as a hearing on Mother's motion to correct error on July 11, 2017.[3]  On August 14, 2017, the court entered an order denying Mother's motion to correct error.  With regard to the review issues, the court found that the parties were following the GAL's recommendations to which they had agreed.  The court also determined that Father's arrearage for

---

[2] The court did not calculate the amount of Father's arrearage for the underpayment of child support on account of his understated income.

[3] The parties stipulated and agreed on the record that the time limitation for the court to rule on the motion to correct error would not apply.  *See* Ind. Trial Rule 53.3(B)(2).

his underpayment of support from 2011 to 2016 was $4,804 and ordered Father to pay an additional sum of $25 toward such arrearage until paid in full. Mother now appeals. Additional facts will be provided where necessary.

## Discussion & Decision

### Standard of Review

[10] A trial court's calculation of child support is presumed valid, and we will review its decision only for an abuse of discretion. *Thompson v. Thompson*, 811 N.E.2d 888, 924 (Ind. Ct. App. 2004), *trans. denied*. The trial court in this case entered findings of fact and conclusions thereon. *See* Ind. Trial Rule 52(A). Accordingly, this court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). In reviewing T.R. 52(A) findings and conclusions, we apply a two-tiered standard of review, first determining whether the evidence supports the findings and then whether the findings support the judgment. *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous only if its findings of fact do not support its conclusions or if its conclusions do not support its judgment. *Id*.

### 1. Reimbursement

[11] Mother argues that the trial court abused its discretion in refusing her reimbursement request for overnight credits granted Father in 2011 that she claims Father did not use.[4] Mother asserts that Father exercised no more than fifty overnights per year, which is far less than the 185 overnights per year with which he was originally credited. As a result, Mother maintains that Father has been unjustly enriched, having received a windfall of nearly $20,000 for overnight credits he did not use through March 2016.

[12] When the court determined Father's child support obligation in 2011, it noted the unusual arrangement between the parties and determined that Mother and Father "Split time w/[C]hild." *Appellant's Appendix Vol. 2* at 19. In accordance with this finding, the court granted Father credit for 185 overnights. In a subsequent order on a motion to correct errors, the court reaffirmed the 185 overnight credits granted Father.

[13] The record reveals that Father and Mother had an on-again, off-again relationship for several years, with Father essentially living with Mother at various times. Father paid his child support, contributed to Mother's living expenses, paid for childcare expenses, carried insurance for Child, and purchased necessities. The court was presented with conflicting reasons as to why Father did not exercise overnight visitation at his home, with Father asserting that Mother did not want Child to stay at his home and Mother

---

[4] The court's order in this regard was in effect from September 28, 2011, when Mother filed the paternity action, through March 23, 2016, when Father sought modification of his child support.

claiming Child did not stay with Father because Father's family did not acknowledge Child's existence.

[14] In denying Mother's request for reimbursement, the court first noted that it had made specific findings about parenting time in the paternity order issued in January 2012, and that if the parties had "[a]ny disagreement with those findings" such "should have been addressed with a Motion to Correct Error pursuant to the Trial Rules." *Id.* Mother did not challenge the number of overnight credits granted Father until after their relationship ended, which was over four years after the support order was entered. While Mother presented the court with a spreadsheet she created purporting to detail Father's visits with Child, the court was not obligated to accept its veracity in light of contrary testimony. Indeed, the court acknowledged that it had "heard testimony and evidence about parenting time credit" and that based on such, it was "not inclined to make adjustments" thereto. *Appellant's Appendix Vol. 2* at 9. This determination was wholly within the court's discretion. Mother has not established that the trial court abused its discretion in denying her request for a reimbursement of what she claims was unused parenting-time credit.

## 2. Visitation Credit

[15] Mother argues that in modifying Father's child support, the trial court abused its discretion in crediting Father with ninety-eight overnights. Mother asserts that the court credited Father for more visits than he had used in any prior year, which, by her calculations, never exceeded fifty overnight visits. Mother

challenges the trial court's finding that Father exercising less than ninety-eight overnights was not "wholly based upon his personal choice." *Appellant's Appendix* at 8.

[16] Mother's argument assumes that her testimony and evidence were accepted as true. Father, however, presented contrary testimony indicating that he lived with Mother and even acted as Child's primary caregiver for periods of time and that he visited with Child as much as he could. Father also testified that he did not exercise his visitation with Child at his house because Mother "would not let [him]." *Transcript* at 30. When Mother and Father were not in a relationship, Father had Child in his home for overnights.

[17] Here, a credit for ninety-eight overnights is consistent with the court's order that Father exercise parenting time pursuant to the Guidelines. Further, since Father filed his petition to modify custody, he has exercised his parenting time with Child on alternating weekends and as further provided by the Guidelines. The court did not abuse its discretion in crediting Father with ninety-eight overnight visits in calculating Father's modified child support obligation. We also find that there is no basis in the record to support Mother's argument that the visitation credit granted to Father was intended to punish her.

### 3. Omission

[18] Mother argues that the trial court abused its discretion in calculating Father's modified child support obligation by failing to account for her legal duty to support a prior-born child.

[19] The child support worksheet prepared by the court and adopted in the January 12, 2012 paternity order included a support credit of $62.18 for Mother's prior born child. At that time, no such credit was granted to Father because, as the court noted, there was "[n]o information . . . available as to his legal obligation to support [his two prior-born] children." *Appellant's Appendix Vol. 2* at 20. In calculating Father's arrearage based on his understated income from 2011 to 2016, the court did not include such credit to Mother on its child support worksheet. Father concedes this was error.

[20] In modifying Father's child support obligation retroactive to March 23, 2016, the trial court did not include a credit for prior born children for either Mother or Father. Father asserts that because neither party presented evidence regarding their legal duty to support their prior born children, the trial court properly excluded both parent's credit for prior born children. In the alternative, Father argues that if the matter is remanded so that his child support obligation can be recalculated in light of Mother's credit for a prior born child, he should be given the opportunity to present evidence relevant to his legal duty to support his prior born children as he resides with them and is equally responsible for their support with his ex-wife.

[21] Pursuant to Indiana Child Support Guideline 3(C), after weekly gross income is determined for each parent, certain reductions are allowed in computing weekly adjusted income, which is the amount upon which child support is based. These reductions include court orders for support of prior-born children and a legal duty to support prior-born children. "Where a party has a legal support

duty for the child(ren) born prior to the child(ren) for whom support is being established, not by court order, an amount reasonably necessary for such support actually paid, or funds actually expended shall be deducted from weekly gross income to arrive at weekly adjusted income." Child Supp. G. 3(C)(3).

[22] As Father acknowledged, the court should have included in its calculation of Father's arrearage for understated income from 2011 to 2016 a credit for Mother's prior-born child, just as it did when it calculated the initial support obligation. Likewise, this credit to Mother should have been part of the calculation of Father's modified support obligation that is retroactive to March 23, 2016. With respect to a credit for Father's legal duty to support his prior-born children, on remand, the trial court may consider evidence in support of such and make a determination based thereon. We therefore remand with instructions to recalculate Father's arrearage accruing between 2011 and 2016 and his modified support obligation taking into consideration Mother and Father's respective legal duties to support prior-born children.

[23] Judgment affirmed in part, reversed in part, and remanded with instructions.

Najam, J. and Robb, J., concur.