# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 07 2018, 7:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT-MOTHER

Jennifer A. Joas
Madison, Indiana

ATTORNEY FOR APPELLANT-FATHER

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of E.A.G. (Minor Child);

C.L. (Mother) and A.G. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 7, 2018

Court of Appeals Case No.
18A-JT-293

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1706-JT-9

**Najam, Judge.**

## Statement of the Case

A.G. ("Father") and C.L. ("Mother") (collectively "Parents") appeal the trial court's termination of their parental rights over their minor child E.G. ("Child"). Parents present a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of their parental rights. We affirm.

## Facts and Procedural History

Mother gave birth to Child on September 27, 2010. During the Spring of 2015, the Indiana Department of Child Services ("DCS") became aware of allegations that Mother was physically abusing Child, that Mother's mental health was deteriorating, and that the conditions of Mother's home were substandard. At that time, Father was living in Ohio. DCS removed Child from Mother's care on April 2 and filed a petition alleging that Child was a child in need of services ("CHINS"). On June 16, the trial court found Child to be a CHINS. After Parents failed to fully comply with services, on June 20, 2017, DCS filed a petition to terminate their parental rights over Child.

Following a hearing, the trial court granted the petition on January 11, 2018. In support of its order, the trial court entered the following findings and conclusions:

There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that:

* * *

c) DCS became involved with the family due to home conditions, as well as allegations of physical abuse and mother's deteriorating mental health. There were also concerns that mother was selling one of her child's medication and misusing said medication by giving it to the child in this cause. As a result of the allegations, DCS removed the child from mother's care on April 2, 2015. At that time, father was not involved in the child's life.

d) DCS filed a Verified Petition Alleging Child in Need of Services on April 6, 2015.

e) Father was unable to be located until one (1) month after the Department filed its CHINS petition.

f) The Court adjudicated the child a Child in Need of Services on June 16, 2015, and a dispositional decree and parental participation order was entered on July 23, 2015.

g) The Department did not place the child with her non-custodial parent, her father, because DCS could not immediately find him. Once found, father's living situation was not appropriate for the child. Father was living in Ohio, as was the paternal grandmother, and neither individual took the necessary steps to show that they could care for the child. Paternal grandmother told Family Case Manager Julie Colen to stop considering her as a placement option.

h) The Department also did not place the child with the maternal grandmother, due to her criminal history.

i) As part of the Dispositional Order, mother and father were ordered to refrain from using illegal substances, submit to random drug screens, keep the Department updated on their location, participate in visitation, address any mental health issues, and participate in counseling. Neither mother nor father made progress with any of these services.

j) Throughout the underlying CHINS case, mother had several active criminal cases, with offenses including resisting law enforcement, battery resulting in bodily injury, and theft, which has resulted in mother being incarcerated three separate times. During the termination proceedings, mother was incarcerated on her most recent criminal case. . . .

k) Mother claims that she let all of her mental health providers go because of personality conflicts. The Department has alleged, and it was ultimately found, that mother fired all of her mental health providers because they refused to refill her other child's medication, based on reports that mother was selling the medication.

l) Mother never had a consistent address and rarely, if ever, notified the Department of her new address. At one point, the Department did help mother find housing, and paid the security deposit and first month's rent. However, mother lost that housing shortly after obtaining it and did not notify the Department that she no longer lived in that apartment.

m) Mother's mental health concerns have also been on-going. Mother states that she receives disability for depression and bi-polar disorder; however, she did not provide any verification for that disability.

n) Father was referred to complete the Father Engagement program, but always claimed to have difficulty completing that program because he lived out of state.

o) Father worked with Kara Goode, from Bridges Counseling, on finding employment and housing in Indiana, transportation issues, and overall stability. Father lived and worked in Ohio, and his housing situation did not improve. Throughout most of the underlying CHINS case, father admits that he lived in a 2 bedroom home, with 4-5 other individuals. It was only recently, within the last few months, that father's living situation has improved.

p) As part of father working with Bridges Counseling, Ms. Goode routinely sent father applications for jobs in Dearborn County, Indiana and worked with him to update his resume. Father never followed through with completing the applications and never gained employment in the State of Indiana.

q) Ms. Goode also worked with father on his goal to look for housing and employment in Indiana. This goal did not move forward due to father's lack of effort. Ms. Goode offered rides to father for various appointments, but he never responded to her offers. Ms. Goode also had minimal contact with father, only working with him in March and April 2017. She had no contact with him in May 2017, and she last had contact with him around the end of June 2017. In sum, Ms. Goode found that Father had the ability to meet these goals but was unwilling to make any significant effort.

r) Father has not seen the child since the current case manager, Julie Colen, took over managing the case in December 2016. Ms. Colen offered father gas cards to alleviate transportation issues, but father only accepted the help once. Ms. Colen also worked with father and the foster parents on setting up Skype visits, however, father never utilized that service and never requested an alternate form of communication, such as telephone calls.

s) Visitation with mother and father never progressed further than fully supervised visitation.

t) Neither parent disputes that the child has been removed from the parents' care for 15 of the most recent 22 months.

Termination is in the child's best interests of the child in that: Mother continues to have issues with stable housing. As of the termination hearing, mother was incarcerated for theft. Mother's refusal to acknowledge her own mental health issues, as well as her instability, places her child at continued risk of abuse or neglect.

Father has shown little to no initiative to address the issues that prevented the Department from placing his child in his care. Father showed no effort to obtain employment in Indiana as was one of his stated goals, and his living situation throughout the underlying CHINS was not suitable for a child. Father also did not take advantage of offers from DCS to help him with transportation, and he did not attempt to visit with his child for almost a full year. The Court finds it significant that Father's excuse for not visiting the child was that he was busy. It seems that he essentially abandoned the child.

Given the efforts of DCS and time involved in trying to help parents be reunited with the child, it does not appear that future efforts would be successful.

The Department of Child Services has a satisfactory plan for the care and treatment of the child, which is: adoption.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

That the parent-child relationship between . . . the child[] and mother . . . be terminated and all rights, powers, privileges, immunities, duties, and obligations, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

> That the parent-child relationship[] between . . . the child[] and father . . . be terminated and all rights, powers, privileges, immunities, duties, and obligations, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

Appellant Mother's App. Vol. II at 34-36. This appeal ensued.

## Discussion and Decision

We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[6] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Here, in terminating Parents' parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

On appeal, Father contends that the trial court erred when it concluded that the conditions that resulted in Child's removal and the reasons for her placement outside of Mother's home will not be remedied[1] and that termination is in Child's best interests. Mother contends only that termination is not in Child's best interests. We address each contention in turn.

### Conditions that Resulted in Child's Removal will not be Remedied

In determining whether the evidence supports the trial court's conclusion that Father is unlikely to remedy the reasons for Child's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636,

---

[1] The trial court did not conclude that there is a reasonable probability that the continuation of the parent-child relationships poses a threat to Child's well-being.

643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[10] Father does not challenge any of the trial court's findings in support of this conclusion. Rather, Father maintains that

> [t]he only reasons for [Child's] removal [from Mother's care] was Mother's lack of utilities, Mother's destabilized mental state, and the Child's sibling's mental health care. The sole reason the Child was not placed with Father was the number of people then living in his home. But Father had remedied that issue [by the time of the termination hearing]. He had obtained stable housing with sufficient room for the Child and had secured stable and substantial employment.

Appellant Father's Br. at 16-17. But Father's arguments amount to a request that we reweigh the evidence, which we cannot do. First, Father misstates the reasons that Child was not placed with Father. In addition to his housing being inappropriate for Child, DCS did not place Child with Father because, as the trial court found, he did not take "the necessary steps to show that [he] could care for" Child. Appellant Mother's App. Vol. II at 34. Second, Father ignores the undisputed evidence that: he has not seen or communicated by telephone or Skype with Child since December 2016, despite help from Ms. Goode to do so; he only secured appropriate housing a few months prior to the termination hearing; he did not complete the Father Engagement program or attend individual counseling; and he did not take advantage of help from Ms. Goode to find housing and employment in Indiana. Father's habitual patterns of conduct demonstrate that he is unlikely to make the necessary effort to be a suitable parent to Child. Thus, we cannot say that the trial court clearly erred when it concluded that the conditions that resulted in Child's removal will not be remedied.

### Best Interests

[11]　In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't. of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best

interests." *Castro v. State Off. of Fam. & Child.*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child." *In re A.K.*, 924 N.E.2d at 224.

[12] Father contends that termination is not in Child's best interests because, while he did not fully comply with "every single item" listed in the parental participation order, he does not have substance abuse issues and has not committed any crimes. Appellant Father's Br. at 19. And Father blames "the substantial distance and travel involved" to visit Child as the reason for his lack of visitation. *Id.* And Mother contends that, while she "found herself arrested three more times during the CHINS case," she "believed her release from jail to be imminent," and she asserts that she has "a bond" with Child and has "always expressed that she wanted to be reunited" with Child. Appellant Mother's Br. at 19. But, again, Parents' contentions on this issue amount to nothing more than a request that we reweigh the evidence, which, again, we cannot do.

[13] The undisputed evidence shows that Parents failed to comply with the parental participation plan, including failing to keep in contact with family case managers and failing to visit with Child. Father has not seen Child or communicated with her since December 2016, and Mother has been incarcerated multiple times. Child needs consistent and reliable care, and she needs permanency. Parents' family case manager, Julie Colen, testified that, despite offered assistance, Father "has not prioritized [Child] in his life." Tr.

Vol. I at 159. And Colen testified that, in light of the "significant amount of time" that Mother has been incarcerated, Mother cannot give Child needed stability. *Id.* at 160. The totality of the evidence, including Parents' historical inability to provide a safe and stable home for Child and their failure to maintain contact with Child, supports the trial court's conclusion that termination of Parents' parental rights is in Child's best interests.

[14] Affirmed.

Crone, J., and Pyle, J., concur.